**Samuel SANDOVAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–99–00189–CR.**

Court of Appeals of Texas,
El Paso.

Dec. 21, 2000.

Rehearing Overruled Jan. 24, 2001.

Ruben Nunez, James Darrell Lucas, El Paso, for Appellant.

Jaime E. Esparza, Dist. Atty., Richard Dulany, Jr., Asst. Dist. Atty., El Paso, for State.

Before LARSEN, McCLURE, and CHEW, JJ.

## OPINION

LARSEN, Justice.

Samuel Sandoval appeals his misdemeanor conviction for the offense of driving while intoxicated. Sandoval entered a negotiated plea of guilty and was sentenced to a term of probation. On appeal, Sandoval challenges the trial court's denial of his pretrial motion to suppress. We affirm.

### FACTS

On October 3, 1998, Jara Torres was at home celebrating her birthday with her family and friends around 10 p.m. when she heard a loud "crash" outside. She looked outside to the driveway where her brother's car was parked and noticed that the car had moved and that another car was behind it. Running outside, she saw that a man had just collided with her brother's car and that he was trying to back his own car from the driveway. She told him to get out of the car and asked him what he was doing, but he instead reversed the car and drove away with his lights off. Several men at the party followed the driver by car. Jara's sister called the police.

Ismael Torres, Jara's husband, had been standing at the back of the driveway when he heard the crash. He ran towards the driveway and saw that a large four-door car had crashed into a car parked in the

driveway, then fled the scene. Torres, his brother-in-law, and a friend followed by car, at one point observing the car being driven against the flow of traffic. The car eventually pulled into a driveway, and Torres pulled in right behind, blocking the car. Torres confronted the driver and asked him about what had happened. The driver, Samuel Sandoval, said he had no recollection of the collision. Torres's brother-in-law went to the next-door neighbors' house and called the police. Torres also spoke with Sandoval's wife and advised her of what had happened. When Sandoval exited his vehicle, his wife had to help him as he was wobbling around and could not stand without assistance.

When the police arrived shortly thereafter, Sandoval went inside his house and into the backyard. The witnesses advised the officers of what had happened, that the driver had gone into the house, and that he appeared intoxicated. After speaking with the witnesses, the officers met with Sandoval's wife, who was standing at the front door. She told them that her husband was home, and that he had been driving the car. She invited them into the house and informed them that he was in the backyard.

Officer Claudio Murillo made contact with Sandoval who was sitting in a chair in the backyard. He asked Sandoval what had happened and whether he had been driving. Sandoval stated that he had. Sandoval appeared intoxicated and had bloodshot eyes and unsteady balance. Murillo placed him under arrest for driving while intoxicated. Subsequent to his arrest, a breath sample was obtained from Sandoval.

Prior to trial, Sandoval filed a motion to suppress any evidence obtained as a result of his warrantless arrest. After an evidentiary hearing, the trial court denied the motion by written order. At the subse-

quent plea hearing, the trial court noted on the record Sandoval's intent to appeal the pretrial ruling on the motion to suppress.

## STANDARD OF REVIEW

In three points of error, Sandoval contends that his warrantless arrest was unconstitutional under the federal and state constitutions, and violated state law. Specifically, he asserts that the trial court erred in failing to grant the motion to suppress because: (1) the State failed to prove that the arrest was proper under Article I, section 9 of the Texas Constitution and Article 38.23 of the Code of Criminal Procedure or that it met one of the warrant exceptions under state law; (2) the arrest was illegal under the Fourth Amendment to the United States Constitution; and (3) the State failed to show that Sandoval's wife was a resident of his home and unauthorized to give the officers consent to enter the house, as required under Article 14.05 of the Texas Code of Criminal Procedure.

The appropriate standard of review of a trial court's ruling on a motion to suppress was articulated in *Guzman v. State.*[1] In that Fourth Amendment case, the Court indicated that an appellate court should afford "almost total deference to a trial court's determination of the historical facts" especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.[2] The same amount of deference should be afforded to trial courts' rulings on " 'application of law to fact questions,' also known as 'mixed questions of law and fact' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor."[3] "Appellate courts may review de novo 'mixed questions of law and fact' not falling within this category."[4]

Here, the trial court did not make explicit findings of historical fact. Thus, we

---

1. 955 S.W.2d 85 (Tex.Crim.App.1997).

2. *Id.* at 89.

3. *Id.*

4. *Id.*

must review the evidence in the light most favorable to the trial court's ruling.[5] Since the issue here is the legality of Sandoval's warrantless arrest, we review the suppression de novo.[6]

### "Suspicious Place" Exception to Warrant Requirement

▮ When a defendant seeks to suppress evidence because of an illegal arrest that violates the federal or state constitutions, the defendant has the initial burden to produce evidence that defeats the presumption of proper police conduct.[7] The defendant can meet the initial burden by proving that a search or seizure occurred without a warrant.[8] Upon this proof by the defendant, the burden shifts to the State.[9] If the State is unable to produce evidence of a warrant, then it must prove the reasonableness of the search or seizure.[10] Here, at the pretrial suppression hearing, the State stipulated that the facts would show a warrantless arrest for driving a motor vehicle while intoxicated. The State therefore agreed that it had the burden of proof at the hearing to show the reasonableness of the seizure.[11]

▮ First, Sandoval contends that trial court erred in failing to suppress the evidence because his warrantless arrest was not authorized under the Texas Code of Criminal Procedure, or the Texas Constitution. State law, not federal law, governs the legality of a state arrest so long as the state law does not violate federal constitutional protections against unreasonable searches and seizures.[12] To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense.[13] Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed.[14] The determination of probable cause at the time of the questioned event is viewed from the "totality of the circumstances."[15] The reviewing court must look at the totality of the circumstances to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned event.[16]

▮ The State contends that the arrest was valid under Texas Code of Criminal Procedure Article 14.03(a)(1). To obtain the benefit of this provision, the State must show that: (1) it had probable cause to arrest Sandoval; and (2) Sandoval was in a suspicious place.[17] Under Article 14.03(a)(1), a peace officer may arrest without a warrant persons found in "suspi-

---

5. *See Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000).

6. *See id.; Guzman,* 955 S.W.2d at 90; *State v. Mercado,* 993 S.W.2d 815, 817 (Tex.App.—El Paso 1999, pet. ref'd).

7. *See Russell v. State,* 717 S.W.2d 7, 9 (Tex. Crim.App.1986); *State v. Simmang,* 945 S.W.2d 219, 220 n. 2 (Tex.App.—San Antonio 1997, no pet.).

8. *See Russell,* 717 S.W.2d at 9.

9. *Id.*

10. *Id.* at 10.

11. *See Russell,* 717 S.W.2d at 9–10; *State v. Fecci,* 9 S.W.3d 212, 214 n. 3 (Tex.App.—San Antonio 1999, no pet.).

12. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App.1991).

13. *Id.* at 411.

14. *See Guzman,* 955 S.W.2d at 87; *Amores,* 816 S.W.2d at 413.

15. *Angulo v. State,* 727 S.W.2d 276, 278 (Tex. Crim.App.1987).

16. *Guzman,* 955 S.W.2d at 87; *Angulo,* 727 S.W.2d at 278.

17. *See State v. Parson,* 988 S.W.2d 264, 266 (Tex.App.—San Antonio 1998, no pet.).

cious places" and under circumstances which reasonably show that such persons have been guilty of some felony, offenses against public order and decency, breach of the peace, or public intoxication, or threaten, or are about to commit some offense against the law.[18] While Article 14.03(a)(1) does not specifically state "probable cause," it is held to require the legal equivalent.[19]

Whether a place is considered "suspicious" for purposes of Article 14.03 is a highly fact-specific question.[20] Although few places are inherently suspicious, and certainly one's own backyard would not normally be considered a suspicious place, a place may become "suspicious" because of facts and circumstances, together with any reasonable inferences which can be drawn from those facts.[21] In *Parson*, a hit and run case, the court held that the defendant's front yard was a suspicious place under the circumstances and with the information made known to the officer.[22]

In *Crowley v. State*,[23] a witness followed the defendant after she fled from a hit and run accident, and saw the defendant enter her garage. The witness waited there until police arrived. There the court held that the defendant's garage was a suspicious place under the circumstances, and that failing to stop and give information after an accident was a breach of the peace.[24] Thus, the court found the defendant's warrantless arrest was valid under Article 14.03(a)(1).[25]

Here, the witnesses followed Sandoval home after he fled the scene of the accident without stopping to give information.

When the police arrived at the defendant's house, they were informed by the witnesses of the details of the accident and that Sandoval was the driver and appeared intoxicated. Sandoval was seen going inside his house when the officers arrived. His wife informed the officers that her husband had been driving and that he was inside. There was also visible damage to Sandoval's car in the driveway. Sandoval's wife permitted the officers to enter the house and advised them that Sandoval had gone into the backyard. The officers found him there and asked him about the accident. Sandoval admitted he had been driving. He also appeared intoxicated to the officers, as they noted his bloodshot eyes and unsteady balance.

Based on the circumstances and the information known to the officers, we find that Sandoval's backyard could reasonably be characterized as a suspicious place. Further, Sandoval had committed a breach of the peace.

A recent law review article is highly critical of the "suspicious places" law that has developed in Texas, stating that "[t]he starting premise for any exception to a rule of law must be that the exception not swallow the rule. Texas cases interpreting the suspicious places requirement come dangerously close to doing just that."[26] We take this caution seriously, and emphasize that, by itself, or even coupled with probable cause to believe that a breach of the peace has occurred, one's own backyard does not satisfy the "suspicious places" exception to the warrant requirement. The same article, however, ac-

18. Tex.Code Crim.Proc.Ann. art. 14.03(a)(1) (Vernon Supp.2000).

19. *See Rosalez v. State*, 875 S.W.2d 705, 719 (Tex.App.—Dallas 1993, pet. ref'd).

20. *See Parson*, 988 S.W.2d at 268.

21. *Id.*

22. *Id.* at 269.

23. 842 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1992), *pet. ref'd per curiam*, 830 S.W.2d 613 (Tex.Crim.App.1992).

24. *Id.* at 703–04.

25. *Id.*

26. Gerald S. Reamey, *Arrests in Texas's "Suspicious Places": A Rule in Search of Reason*, 31 Texas Tech.L.Rev. 931, 974 (2000).

knowledges that the evanescent quality of evidence may combine with other factors to satisfy Article 14.03(a)(1).[27] We believe this is the case here: Sandoval was arrested for driving while intoxicated. Proving intoxication is an essential element of the offense, and testing for alcohol levels is a time-sensitive matter. Accordingly, we find his warrantless arrest was valid under Article 14.03(a)(1).

■ Sandoval next contends that his state constitutional rights were violated when Officer Murillo arrested him without a warrant. Article 1, section 9 of the Texas Constitution provides:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.[28]

■ The Court of Criminal Appeals has held that Article I, section 9 does not require a warrant for searches and seizures, and a search or seizure that is otherwise reasonable will not be found to be in violation of that section because it was not authorized by a warrant.[29] Thus, Article I, section 9 does not offer greater protection to an individual than the Fourth Amendment of the federal constitution, but will be interpreted independently.[30]

Sandoval does not contend, however, that the United States and Texas Constitutions differ in any relevant respect. Therefore, we will assume for the purposes of this opinion that his rights under the Texas Constitution are comparable to those secured by the United States Constitution, which also guarantees against unreasonable searches and seizures and states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[31]

■ The Fourth Amendment does not forbid "all searches and seizures, but unreasonable searches and seizures."[32] In the context of an arrest, an officer acting with probable cause to arrest may do so without a warrant and not violate the Fourth Amendment.[33]

In the instant case, we hold that the totality of the circumstances, as outlined above, when viewed in the light most favorable to the decision of the trial court, provided the officers probable cause to arrest Sandoval. Accordingly, his warrantless arrest was reasonable and did not violate either the state or federal constitu-

**27.** *Id.* at 976.

**28.** Tex. Const. art. I, § 9.

**29.** *Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim.App.1998).

**30.** *Id.* at 436–37.

**31.** U.S. Const. amend. IV; *See Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App. 1992) (state and federal constitutional protections deemed identical for purposes of appeal where appellant presents no separate argument showing why state constitutional protection differs from federal constitutional protection), *cert. denied*, 507 U.S. 975, 113 S.Ct.

1422, 122 L.Ed.2d 791 (1993); *Givens v. State*, 949 S.W.2d 449, 450 (Tex.App.—Fort Worth 1997, pet. ref'd).

**32.** *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669, 1680 (1960); *Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App.1997); *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App.1997), *cert. denied*, 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997).

**33.** *United States v. Watson*, 423 U.S. 411, 415–17, 96 S.Ct. 820, 823–25, 46 L.Ed.2d 598, 604–605 (1976) (warrantless arrest authorized by statute and based on probable cause did not violate Fourth Amendment).

tion. Thus, the trial court did not err in denying Sandoval's motion to suppress.

Appellant further contends that the evidence obtained as a result of his warrantless arrest was inadmissible under Article 38.23, Texas Code of Criminal Procedure.[34] Because we have found that appellant's arrest was valid, there was no violation of any provisions of the state and federal constitutions, nor any violation of the state and federal laws.[35] Consequently, there can be no violation of Article 38.23.[36] Point of Error One is overruled.

## WAIVER OF OTHER ISSUES

In his second point of error, Sandoval claims that the warrantless entry into his home in order to arrest him for a minor non-felony offense was unreasonable under the Fourth Amendment thus rendering his arrest illegal. The State argues that Sandoval failed to preserve error. In his motion to suppress, Sandoval simply asserted that his detention and warrantless arrest were illegal under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, as well as Article I, section 9 of the Texas Constitution, and Articles 1.06, 14.03, and 38.23 of the Texas Code of Criminal Procedure. He did not specify, however, the claim that he asserts now on appeal. Nor did he present this argument at the hearing on his motion. As such, Sandoval has procedurally defaulted his argument raised on appeal.[37] Point of Error Two is overruled.

Finally, in his third point of error, Sandoval argues that the arrest was illegal under Article 14.05 because the State failed to show that the person who gave consent to enter the residence, Sandoval's wife, also lived at the residence. The State argues that Sandoval waived this argument because he failed to assert this claim in the trial court. In his motion to suppress, Sandoval argued that the arrest was illegal under Articles 1.06, 14.03, and 38.23 of the Code of Criminal Procedure. He did not raise the issue of consent to enter the home and did not assert Article 14.05 as a basis for his suppression motion. Thus, Sandoval's argument on appeal does not comport with his argument at trial.[38] As such, he presents nothing for review.[39] Point of Error Three is overruled.

## CONCLUSION

Sandoval's points of error are overruled. The judgment is affirmed.

---

34. *See* Tex.Code.Crim.Proc.Ann. art. 38.23(a) (Vernon Supp.2000) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

35. *See Middleton v. State,* 9 S.W.3d 428, 432 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

36. *See id.*

37. *See* Tex.R.App.P. 33.1(a); *Martinez v. State,* 17 S.W.3d 677, 682–83 (Tex.Crim.App.2000).

38. *See Martinez,* 17 S.W.3d at 682–83.

39. *See* Tex.R.App.P. 33.1(a).