TAYLOR V BRIGHAM



NO. 07-00-0225-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JANUARY 16, 2002


______________________________



H.B. TAYLOR, JR
,




 Appellant


v.



BRIGHAM OIL & GAS, L.P.,

BRIGHAM LAND MANAGEMENT,

 and VERITAS GEOPHYSICAL, LTD., 



 Appellees

_________________________________



FROM THE 31ST DISTRICT COURT FOR WHEELER COUNTY;



NO. 10,341; HON. STEVEN R. EMMERT, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 H.B. Taylor, Jr. (Taylor), appeals from a final summary judgment entered in favor
of Brigham Oil and Gas, L.P., and Brigham Land Management (collectively referred to as
Brigham) and Veritas Geophysical, Ltd. (Veritas). The dispute arose from entry by Veritas
onto land, the surface of which Taylor owned. Veritas so entered the premises to conduct
seismic exploration on behalf of Brigham. The three points of error before us involve 1)
the authority to enter upon the lands, 2) unreasonably exceeding the extent of the
permission or the commission of negligence once entry was gained, and 3) punitive
damages. (1) We affirm the judgment.

Background


 Brigham and Veritas sued Taylor for declaratory and injunctive relief. Taylor had
leased the land in question for mineral exploration. Brigham obtained permission from a
minority working interest owner to conduct seismic exploration upon the property and
engaged Veritas to perform the work. However, Taylor refused them entry, threatening to
meet them with a shotgun. Thus, Brigham and Veritas sued. 

 Upon joining issue, Taylor counterclaimed for damages. By that time, Veritas had
entered upon the realty and conducted the operations desired. According to Taylor,
however, the exploration encroached upon more of the surface than was reasonably
necessary. So too did Taylor allege that Veritas not only negligently damaged portions of
the surface estate but did so with malice. Brigham and Veritas subsequently moved for
summary judgment, contending that 1) it had a right to enter the property to conduct
seismic operations and 2) Taylor had no evidence evincing that they breached any duty
owed him or acted with malice. The trial court agreed, granted the motion, and entered
summary judgment in favor of Brigham and Veritas.

Points One and Two


 Though Taylor contended below that neither Brigham nor Veritas had permission
to enter, he modifies his argument on appeal. Through point one, he now posits that the
extent of their authority did not include the right to traverse the surface estate more than
was reasonably necessary or to negligently damage the surface estate. (2) Moreover, his
second point covers the same subject. That is, through it, he believes that he presented
sufficient evidence to create an issue of fact regarding whether the entities acted
unreasonably. Given the similarity between the two issues, we address them together and,
upon doing so, overrule them.

 Standard of Review

 The standard of review applicable to no evidence summary judgments is well-settled. We find it sufficient to merely cite the litigants to Kimber v. Sideris, 8 S.W.3d 672,
675 (Tex. App. - Amarillo 1999, no pet.).

 Furthermore, to the extent that one has a right to enter upon the surface estate to
explore for oil and gas, the right is not necessarily absolute. Unless the parties agree
otherwise, the entity performing the exploration may not commit negligence nor use more
of the surface than reasonably necessary. Humble Oil & Refining Co. v. Williams, 420
S.W.2d 133, 134 (Tex. 1967); Oryx Energy Co. v. Shelton, 942 S.W.2d 637, 641 (Tex
App.--Tyler 1996, no writ). Yet, evidence that damage occurred to the surface while
exploring for minerals alone is not evidence of negligence or unreasonably excessive use. 
This is so because of the nature of the estates involved and the correlative rights and
liabilities accompanying them. 

 The execution of a mineral lease not only severs the minerals from the surface but
also creates dominant and servient estates. The entity that owns the minerals enjoys the
dominant estate. Tarrant County Water Control & Improv. Dist. v. Haupt, Inc., 854 S.W.2d
909, 911 (Tex. 1993) (stating that the mineral estate is the dominant estate). Furthermore,
ownership of the dominant estate carries with it the right to enter and extract the minerals
and "all other such incidents thereto as are necessary to be used for getting and enjoying"
the minerals. Id. And, incident to the right to extract is the right to explore. Id. More
importantly, if in pursuing these rights, the servient estate is susceptible to use in only one
manner, then the owner of the dominant estate may pursue that use irrespective of
whether it results in damage to the surface. Id.; Getty Oil Co. v. Jones, 470 S.W.2d 618,
622 (Tex. 1971). In other words, if particular damage to the surface estate cannot
reasonably be avoided in legitimately pursuing the rights of the dominant estate, the owner
of the dominant estate is not liable for the damage. 

 Thus, the mere fact of damage to the surface does not evince unreasonable
conduct. See Ball v. Dillard, 602 S.W.2d 521, 523 (Tex. 1980). Instead, it is encumbent
upon the surface owner to establish that the dominant estate owner failed to use
reasonable care in pursuing its rights or that the rights could have been pursued through
reasonable alternate means sufficient to achieve the goal desired but without the damage. 
Tarrant County Water Control & Improv. Dist. v. Haupt, Inc., 854 S.W.2d at 91. Simply put,
the servient estate owner must prove that its opponent failed to act reasonably given the
correlative rights and liabilities involved. 


 Application of Standard

 Here, Taylor alleges that Brigham and Veritas were unreasonable in the manner in
which they performed the seismic work. This is allegedly so because in using the
equipment they did (vibraseisors) and the manner in which they used it, they purportedly
traversed 16 miles of surface land as opposed to four, drove over the contours of each
canyon, removed or damaged 75 to 80 feet of fencing, created "unordinary ruts," cut grass
and other plant life off of hillsides which caused "[c]onsiderable erosion," and "cut the top
off" of hills 'they had gone up.'" Additionally, the damage caused by this round of seismic
exploration was greater than that caused previously, according to Taylor. Yet, aside from
the general allegation that three dimensional seismic exploration was performed and that
vibraseisors were utilized, no evidence appears of record describing what three
dimensional seismic exploration reasonably entails. Nor does evidence appear illustrating
the extent of the goals sought to be achieved through the exploration, what effort was
reasonably necessary to achieve them, whether they could have been achieved through
alternate, reasonable means which would not have resulted in any of the alleged damage
described above, that the damage allegedly committed was not the reasonable result of
the activities undertaken, or that the acts of either Brigham or Veritas were unreasonable. (3) 


 Simply put, all we have before us is evidence of the purported damage arising from
the activities of Brigham and Veritas, and as previously mentioned, proof of damage is not
evidence of unreasonable care or conduct. And, because there exists no evidence
illustrating unreasonable care or conduct on the parts of Brigham or Veritas, the trial court
was authorized to grant summary judgment on that particular ground (as requested by the
two companies). That is, it was entitled to grant summary judgment upon Taylor's claim
of negligence and unreasonably excessive use of the surface estate. (4) 

 Accordingly, we affirm the summary judgment.


 Brian Quinn

 Justice



Do not publish.
1. A fourth ground concerned the entitlement of Brigham and Veritas to attorney's fees. That particular
claim, however, was the subject of a notice to non-suit. Thus, it is not before us, and we need not consider
it. 
2. Taylor may have altered his argument because he admitted, via responses to request for admissions,
that "Brigham had the right to enter the land for the purpose of conducting seismic or geographical tests . .
. ." And, although this admission does not encompass the authority of Veritas to enter the premises, Taylor
does not argue on appeal that Veritas lacked such authority. Again, he merely asserts that it could not act
unreasonably in conducting the operations. 
3. To the extent that Taylor opined that the "damage done [by the seismic operations at issue was]
greater than that done during previous seismic operations" and that the damage was "clearly more extensive
than damage done by other seismic operations which [he was] familiar" does not fill the void. Aside from such
statements being little more than conclusory opinion lacking probative value, Cox v. Bancoklahoma Agri-Service Corp., 641 S.W.2d 400, 402 (Tex. App.-Amarillo 1982, no writ) (holding that summary judgment
evidence must be in a form admissible at trial and state fact as opposed to subjective opinion and conclusion),
nothing illustrates the nature and extent of the previous explorations or their reasonableness. Without such
evidence, one cannot reasonably compare them with the exploration at bar to determine whether an issue of
fact exists regarding the reasonableness of the exploration at bar. 
4. Because the trial court was so authorized, no actionable misconduct has been established upon
which to assess punitive damages. Thus, we need not consider Taylor's third and last point of error involving
whether he presented evidence sufficient to create an issue of fact regarding his entitlement to such damages.



the parking lot. 
The driver agreed not to leave but wanted to back out of the drive-through lane. After he
backed up, however, the driver put the truck in “drive,” pulled out of the parking lot onto the
roadway, and drove away. During this process, Garcia noticed that the front end of the
truck was damaged.
          As the truck was leaving, Garcia jotted down the license plate number. He believed
the driver was extremely intoxicated and might possibly harm himself or someone else. 
He called 911 and reported the incident. He described the truck as a white Dodge
extended cab pickup with a chrome toolbox. 
          Jose Barrientes, Texas Department of Public Safety Trooper, received a dispatch
of Garcia’s incident report and began patrolling the area for the truck. Within
approximately twenty minutes, he was notified by a Hockley County Sheriff Deputy that the
truck had been located. Within minutes, Trooper Barrientes arrived at the location and
observed a pickup truck matching Garcia’s description parked behind a residence with
front-end damage consistent with striking a fixed object such as a concrete pole. The
engine was still warm.
          Trooper Barrientes approached the front door of that residence and knocked. A
woman answered and invited him inside. She identified the truck as belonging to
Appellant. Appellant then approached them from downstairs. He verified that he owned
the truck but indicated he hadn’t driven it in a week. Trooper Barrientes detected a strong
odor of alcohol coming from Appellant. His eyes were red and glassy, his speech was
slurred, and he was unsteady on his feet—staggering when he walked. 
          Trooper Barrientes informed Appellant that his truck was damaged and asked if he
would come outside to inspect the damage. Appellant complied and, as they walked down
the sidewalk, Trooper Barrientes asked Appellant to step in front of his patrol car so that
he could document Appellant’s condition with his in-car video. Appellant refused and
continued toward the truck. After Appellant had inspected the damage, Trooper Barrientes
read him his Miranda rights.
          Appellant told the officers he had been drinking downstairs at his residence and
denied being at WayneBo’s earlier. He refused all field sobriety tests. Based on his
observations, Trooper Barrientes concluded Appellant was intoxicated and a danger to
himself and others.
          Meanwhile, Deputy Jesse Quintanilla picked Garcia up at WayneBo’s and drove him
to the location of Appellant’s vehicle. Garcia observed Appellant standing next to a fence. 
The area was well-lit by the headlights from the patrol cars. Garcia identified Appellant as
the intoxicated driver of the vehicle that struck the concrete pole outside WayneBo’s and
subsequently drove away. He also identified Appellant’s truck as the vehicle that struck
the pole.


 
          Following the identification, Trooper Barrientes believed Appellant had been driving
while intoxicated and placed him under arrest. When he attempted to place Appellant in
the patrol car, Appellant leaned in and nearly fell into the car. The assistance of several
officers was necessary to assist Appellant into the car. At the jail, Appellant refused to give
a breath sample. During a DWI interview prefaced with Miranda warnings, Appellant
admitted he had been drinking prior to the time the incident occurred at WayneBo’s. 
          For the defense, Rhonda Morris, general manager of Berry-Stricklen Insurance
Services, testified that WayneBo’s had not filed a claim on Appellant’s policy for damage
to the concrete pole. And, Cynthia Ann Kaufmann, Appellant’s cousin through marriage,
testified that family members were aware Appellant commonly kept his keys to the truck 
in its bed underneath the mat liner. She also identified Appellant from the photograph
taken by a deputy the night of the incident, i.e., the same photograph Garcia identified
Appellant from earlier in the trial. Thereafter, the jury convicted Appellant of felony driving
while intoxicated and subsequently assessed his punishment at life imprisonment.
 

Discussion
          Appellant contends the evidence at trial was legally and factually insufficient to
support a conviction for felony driving while intoxicated because Garcia was unable to
identify Appellant as the driver in the courtroom and, assuming he was the driver, there
was no evidence Appellant was intoxicated at the time he allegedly drove the vehicle to
and from WayneBo’s. He also asserts the trial court prematurely terminated his voir dire
of the jury regarding any prejudicial impact of his prior record on punishment. Lastly,
Appellant contends the trial court erred by failing to suppress evidence obtained due to his
illegal warrantless arrest.
          I.        Legal and Factual Sufficiency
          When conducting a legal sufficiency review of the evidence to support a criminal
conviction, we view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Drichas v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). 
We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any
witnesses, as this is the function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735,
740 (Tex.Crim.App. 1999). Instead, we determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted at trial in the
light most favorable to the adjudication. Adelman v. State, 828 S.W.2d 418, 422
(Tex.Crim.App. 1992). Circumstantial evidence is as probative as direct evidence in
establishing an accused’s guilt, and circumstantial evidence alone can be sufficient. 
Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). 
          When conducting a factual sufficiency review, we examine all the evidence in a
neutral light and determine whether the trier of fact was rationally justified in finding guilt
beyond a reasonable doubt. Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App.), cert.
denied, ___ U.S. ___,128 S.Ct. 282, 169 L.Ed.2d 206, 76 U.S.L.W. 3165 (2007); Watson
v. State, 204 S.W. 3d 404, 415 (Tex.Crim.App. 2006). We are to give deference to the
factfinder’s determination if supported by the record, and cannot reverse a conviction
unless we find some objective basis in the record that demonstrates that the great weight
and preponderance of the evidence contradicts the verdict. Id. at 417. 
          A person commits the offense of driving while intoxicated if the person is intoxicated
while operating a motor vehicle in a public place. See Tex. Penal Code Ann. § 49.04(a)
(Vernon 2003). A person is considered “intoxicated” if the person: (1) does not have the
normal use of their mental faculties by reason of the introduction of alcohol into the body;
(2) does not have the normal use of their physical faculties by reason of the introduction
of alcohol into the body; or (2) has an alcohol concentration in his breath, blood, or urine
of 0.08 or more. Id. at § 40.01(2). 
          That Garcia was unable to positively identify Appellant at trial as the intoxicated
driver of the truck that collided with the concrete pole outside WayneBo’s is
inconsequential. Garcia identified Appellant as the driver shortly after the incident and, at
trial, from a photograph taken the night of the incident. Appellant’s sister also identified
Appellant from the same photograph.
          There was also an abundance of circumstantial evidence from which the jury could
infer that Appellant was intoxicated at the time he drove to and from the liquor store the
night of the incident: (1) Garcia identified Appellant as the driver of a truck that collided with
a concrete pole next to the drive-through lane at WayneBo’s with force enough to shake
the liquor store; (2) when Garcia stood outside the cab of the truck on the driver’s side, he
observed that Appellant appeared extremely intoxicated noticing a strong smell of alcohol
coming from the truck cab and Appellant’s speech was slurred; (3) Appellant left the scene
of the accident; (4) a little over twenty minutes later, Trooper Barrientes observed
Appellant’s truck behind his residence, there was front end damage consistent with striking
a stationary object such as a concrete pole, and the engine was warm; (5) when Trooper
Barrientes observed Appellant in his residence, he detected a strong odor of alcohol
coming from Appellant, his eyes were red and glassy, speech slurred, he staggered when
he walked, and he was unstable when placed into the patrol vehicle; and (6) Appellant
admitted he was the owner of the pickup and later to drinking before the incident. Garcia
identified Appellant’s truck as the vehicle that struck the pole and Appellant as the
intoxicated driver. Accordingly, having reviewed the entire record, we find the jury’s
findings were rational and the great weight and preponderance of the evidence supports,
rather than contradicts, the verdict. Appellant’s first issue is overruled.
          II.       Voir Dire
          It is a well-established principle that the conduct of voir dire rests largely within the
sound discretion of the trial court. Woods v. State, 152 S.W.3d 105, 108 (Tex.Crim.App.
2004), cert. denied, 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005). The
appropriate standard of review is whether the trial court abused that discretion; Boyd v.
State, 811 S.W.2d 105, 115-116 (Tex.Crim.App.), cert. denied, 502 U.S. 971, 112 S.Ct.
448, 116 L.Ed.2d 466 (1991), and “[t]he appropriate standard of harm is to disregard the
error unless a substantial right has been affected.” Woods, 152 S.W.3d at 109-110. “A
substantial right is affected when the error has a substantial and injurious effect or
influence in determining the jury’s verdict.” Id. at 110. 
          A trial court may impose reasonable restrictions on the exercise of voir dire
examination including reasonable limits on the amount of time each party can question the
jury panel. Caldwell v. State, 818 S.W.2d 790, 793 (Tex.Crim.App. 1991), overruled on
other grounds, Castillo v. State, 913 S.W.2d 529 (Tex.Crim.App. 1995). A reasonable time
limitation for one case may not be reasonable for another, and each case must be
examined on its own facts. Ratliff v. State, 690 S.W.2d 597, 600 (Tex.Crim.App. 1985). 
While a trial court may not restrict proper questions that seek to discover a juror’s view on
issues relevant to the case, McCarter v. State, 837 S.W.2d 117, 121-22 (Tex.Crim.App.
1992), we will not reverse the trial court’s refusal to allow defense counsel additional time
on voir dire absent an abuse of discretion. See id. at 119; Caldwell, 818 S.W.2d at 793;
Dhillon v. State, 138 S.W.3d 583, 587 (Tex.App.–Houston [14th Dist.] 2004, no pet.).
          When a party complains of an inability to collectively question the venire, a two-part
test applies: (1) whether the complaining party attempted to prolong the voir dire; and (2)
whether the questions the party was not permitted to ask were proper voir dire questions. 
McCarter, 837 S.W.2d at 121. See Dhillon, 138 S.W.3d at 587-88. When an appellant
challenges the trial court’s limiting the time allowed for voir dire, we focus on whether
appellant proffered a proper question concerning a proper area of inquiry. Thacker v.
State, 889 S.W.2d 380, 390 (Tex.App.–Houston [14th Dist.] 1994), cert. denied, 516 U.S.
810, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995). 
          Appellant was permitted in excess of an hour to voir dire prospective jurors. He was
warned a number of times that his time was expiring but given additional time to complete
his questioning. His last request was for an additional fifteen to twenty minutes which the
trial court denied but nonetheless granted five additional minutes. Appellant objected but
did not state why he required additional time in this particular case or proffer specific
questions that he was prevented from asking the prospective jurors.


 He simply submitted
his voir dire outline consisting of eight pages of questions–many of which were open-ended. 
          Because Appellant did not narrow the scope of his need for further inquiry beyond
the eight page outline, a wide range of specific questions–both proper and improper–could
have been asked. Given the broad nature of this request, it is impossible for this Court to
determine whether Appellant’s further inquiry would have been appropriately phrased, non-repetitive and/or relevant. See Hart v. State, 173 S.W.3d 131, 139 (Tex.App.–Texarkana
2005, no pet.). Unable to make this determination, we cannot find that the trial court
abused its discretion in refusing Appellant’s request for additional time. See Caldwell, 818
S.W.2d at 794; Barrett v. State, 516 S.W.2d 181, 182 (Tex.Crim.App. 1974). See also 
Thacker, 889 S.W.2d at 390-91. Appellant’s second issue is overruled. 
          III.      Warrantless Arrest
          Appellant maintains the trial court erred by refusing to suppress evidence obtained
as a result of an illegal warrantless arrest. A trial court’s ruling on a motion to suppress is
reviewed for abuse of discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App.
2002). However, where we are presented with a question of law based on undisputed facts,
we perform a de novo review. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). 
In our review, the evidence is viewed in a light most favorable to the trial court’s ruling
because findings of fact were neither requested nor issued. See Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex.Crim.App. 2000). If the trial court’s decision is correct on any theory
of law applicable to the case, it will be sustained. Armendariz v. State, 123 S.W.3d 401, 404
(Tex.Crim.App. 2003), cert. denied, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004). 
           The sole issue at the suppression hearing was whether Appellant’s warrantless arrest
for driving while intoxicated met the requirements of the Texas Code of Criminal Procedure. 
As a general rule, police officers must obtain an arrest warrant before taking someone into
custody. De Jarnett v. State, 732 S.W.2d 346, 349 (Tex.Crim.App. 1987). However, a
police officer may arrest an individual without a warrant if (1) probable cause exists with
respect to the individual in question and (2) the arrest falls within one of the statutory
exceptions in articles 14.01-14.04 of the Texas Code of Criminal Procedure.


 See Amores
v. State, 816 S.W.2d 407, 413 (Tex.Crim.App. 1991); Lunde v. State, 736 S.W.2d 665, 666
(Tex.Crim.App. 1987).
          Article 14.01 permits a warrantless arrest for driving while intoxicated when the
offense is committed in the view, or in the presence, of an arresting officer.


 See Warrick
v. State, 634 S.W.2d 707, 709 (Tex.Crim.App. 1982). Because Trooper Barrientes did not
see Appellant driving, a warrantless arrest for DWI would have been improper under Article
14.01. See Peddicord v. State, 942 S.W.2d 100, 109 (Tex.App.–Amarillo 1997, no pet.);
Elliott v. State, 908 S.W.2d 590, 592 (Tex.App.–Austin 1995, pet. ref’d); Lopez v. State,
936 S.W.2d 332, 334 (Tex.App.–San Antonio 1996, no pet.); Reynolds v. State, 902
S.W.2d 558, 560-61 (Tex.App.–Houston [1st Dist.] 1995, pet. ref’d).



          Article 14.03(a)(1) permits a warrantless arrest of persons (1) found in suspicious
places and (2) under circumstances which reasonably show that such persons have been
guilty of a breach of peace, among other offenses.


 Driving while intoxicated is a breach
of peace. Gallups v. State, 151 S.W.3d 196, 201 (Tex.Crim.App. 2004); Romo v. State,
577 S.W.2d 251, 253 (Tex.Crim.App. 1979). Thus, if Appellant was in a “suspicious place,”
under circumstances which reasonably show that he was driving while intoxicated, then
Trooper Barrientes had authority to arrest Appellant without a warrant.
          Few, if any, places are inherently suspicious. Dyar v. State, 125 S.W.3d 460, 464-65 (Tex.Crim.App. 2003) (quoting Johnson v. State, 722 S.W.2d 417, 421 (Tex.Crim.App.
1986), overruled on other grounds, McKenna v. State, 780 S.W.2d 797, 799
(Tex.Crim.App. 1989)). Determining whether a place has become suspicious is highly fact
specific. Dyar, 125 S.W.3d at 468 (citing Holland v. State, 788 S.W.2d 112, 113
(Tex.App.–Dallas 1990, pet. ref’d)). A place may become “suspicious” because of facts
and circumstances, together with any reasonable inferences which can be drawn from
those facts. Sandoval v. State, 35 S.W.3d 763, 769 (Tex.App.–El Paso 2000, pet. ref’d). 
Suspicious places may include a hospital where a defendant was arrested for DWI soon
after he was transported there after an accident; Dyar, 125 S.W.3d at 468, a residence
where a defendant was arrested for DWI soon after he abandoned his wrecked truck and
fled the scene of an accident; Gallups, 151 S.W.3d at 202, or a backyard where a
defendant was arrested for DWI soon after he fled the scene of an accident in his vehicle. 
Sandoval v. State, 35 S.W.3d at 769-70. To determine whether Appellant’s warrantless
arrest was proper under article 14.03(a)(1), we apply a totality of circumstances test. See
Dyar, 125 S.W.3d at 468. 
          In this case, Trooper Barrientes observations and the physical evidence in
Appellant’s backyard tied Appellant and his pickup truck to the accident scene where
Appellant was observed by Garcia to be committing a breach of the peace, i.e., driving
while intoxicated. Trooper Barrientes had received a dispatch based on an eyewitness
account of a one-vehicle collision, a detailed description of the truck that fled the scene,
and information that the driver was intoxicated. In a little more than twenty minutes, a truck
matching that description was located behind a residence along a fence in an alley. 
Trooper Barrientes observed that the truck engine was warm and there was damage to the
front end consistent with the reported collision. He also observed Appellant, the owner of
the truck, as staggering, with red and glassy eyes, and slurred speech. Subsequently, the
eyewitness to the accident identified Appellant as the driver of the truck involved in the
collision and the truck as the vehicle that struck the concrete pole outside his liquor store. 
The totality of these circumstances made Appellant’s backyard a “suspicious place.” This
conclusion is buttressed by the short time frame between the crime and the apprehension
of the suspect; Dyar, 125 S.W.3d at 468, and the exigent circumstances (the need to
ascertain the suspect’s blood-alcohol level)


 existing to justify an immediate arrest. 
Gallops, 151 S.W.3d at 202. The same facts also provided probable cause to believe that
Appellant had been drinking and driving. 
          Accordingly, we find that Appellant’s warrantless arrest pursuant to article
14.03(a)(1) was proper and overrule his third issue.
Conclusion
          The trial court’s judgment is affirmed.
 
                                                                           Patrick A. Pirtle 

                                                                                  Justice 



Do not publish.