13-02-070- CR; TORRES V STATE














 


NUMBER 13-02-070-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                       
   
JEFFREY TORRES,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.
                                                                                                                                       

On appeal from the County Court of Wharton County, Texas.
                                                                                                                       
  

O P I N I O N

Before Justices Hinojosa, Yañez and Castillo
Opinion by Justice Yañez 

          Pursuant to an agreed punishment recommendation, Jeffrey Torres pled guilty to the
offense of driving while intoxicated.


 The trial court followed the recommendation and gave
Torres permission to appeal the denial of his pre-trial motion to suppress.


 Torres contends
that all evidence seized should be suppressed because: (1) his custodial interrogation
violated the Fifth Amendment of the U.S. Constitution and article 38.22 of the code of
criminal procedure;


 and (2) there was no probable cause to arrest him for driving while
intoxicated. We reverse the trial court’s denial of the motion to suppress and remand.
          At about 2:38 a.m. on October 5, 2000, DPS trooper William Sulak was awakened
and directed to investigate a vehicular accident that had occurred in a rural part of Wharton
County. Upon his arrival, Sulak found Torres seated in the back seat of a deputy sheriff’s
car. Two deputies who had arrived earlier were detaining Torres pending Sulak‘s
investigation of the accident. In Wharton County, the DPS troopers investigate traffic
accidents in rural areas. After arriving at the scene, Sulak determined that a car had left
the roadway and traveled some 150 feet before crashing into the front porch of a residence. 
After speaking with the owners of the residence, Sulak questioned Torres. Torres stated 
that he was not familiar with the road and had made a wrong turn. Sulak took Torres into
custody and left the scene. As they traveled away from the scene, Sulak noticed that
Torres was favoring one of his arms. Sulak inquired and Torres said his arm was hurting. 
Sulak took Torres to the hospital, where it was determined he had a broken arm and injured
rib. 
          Following treatment at the hospital, Sulak took Torres to the sheriff’s office, where
his interrogation was videotaped. Torres refused to take a breathalyzer test and asked to
see his attorney. At that point, the interrogation ceased and Torres was booked for DWI.
          Torres filed a motion to suppress statements he allegedly made to Sulak while in the
deputies’ car, arguing that failure to give him his constitutional and statutory warnings
required suppression. Torres also argued that the motion should be granted because no
probable cause was established to arrest him without a warrant. After the motion was
denied, Torres pled guilty but preserved his right to appeal the denial of the suppression
motion. 
          In reviewing a trial court’s ruling on a motion to suppress, we afford “almost total
deference to a trial court’s determination of the historical facts,” especially when the trial
court’s fact findings are based on an evaluation of credibility and demeanor. Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same amount of deference should
be afforded to a trial court’s rulings on “application of law to fact questions,” also known as
“mixed questions of law and fact,” if the resolution of those ultimate questions turns on an
evaluation of credibility and demeanor. Id. Appellate courts may review de novo “mixed
questions of law and fact” not falling within this category. Id. 
          The State may not use statements, whether exculpatory or inculpatory, stemming
from custodial interrogation of a defendant unless it demonstrates the use of procedural
safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona,
384 U.S. 436, 444 (1966). Custodial interrogation means questioning initiated by law
enforcement officers after a person has been taken into custody or otherwise deprived of
his freedom of action in any significant way. Id. 
          In determining whether an individual is in custody, the ultimate inquiry is whether
there was a formal arrest or restraint on freedom of movement of the degree associated
with a formal arrest. Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam). The
determination depends on the objective circumstances, not on the subjective views of either
the interrogating officers or the person being questioned. Id. at 323. Custody is
established if the manifestation of probable cause, combined with other circumstances,
would lead a reasonable person to believe that he is under restraint to the degree
associated with an arrest. Dowthitt v. State, 931 S.W.2d 244, 245 (Tex. Crim. App. 1996). 
The U.S. Supreme Court, however, has held that in light of the atmosphere surrounding
questioning at an ordinary traffic stop, which is exposed to public view and is unlike the
frequently prolonged interrogation at a station house, persons temporarily detained
pursuant to such stops are not “in custody” for the purposes of Miranda. Berkemer v.
McCarty, 468 U.S. 420, 438-39 (1984). 
          In this case, the trial court did not make any explicit findings of historical fact. 
Therefore, we must review the evidence in the light most favorable to the trial court’s ruling
and assume the trial court made findings that are supported by the record and buttress its
conclusion. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). 
          In his first point of error, appellant argues that the suppression motion should have
been granted because Sulak’s interrogation of him while he was in the deputies’ car was
a custodial interrogation in violation of his U.S. Constitutional and statutory rights. The
State responds that Torres was only temporarily detained until Sulak arrived to conduct the
accident investigation. Such detention, the State argues, was based on a reasonable
suspicion supported by articulable facts that criminal activity might have occurred. See
Terry v. Ohio, 392 U.S. 1, 30 (1968). Specifically, the information that officers must have
in order to justify a Terry-type stop is “specific, articulable facts, which in light of their
experience and general knowledge, together with rational inferences from those facts,
would reasonably warrant [the] intrusion [on the freedom of the citizen].” Glass v. State,
681 S.W.2d 599, 601 (Tex. Crim. App. 1984). 
          In this case, the deputies placed Torres in their car to await Sulak’s arrival. Because
Sulak was the only officer testifying at the suppression hearing,


 there is no evidence
regarding his condition or where he was when the deputies found him. Sulak was called
out of bed at 2:38 a.m. and arrived at 3:07 a.m. Torres’s car was still against the
residence. Shortly after speaking with the owners of the house, Sulak interviewed Torres,
and Torres said he had “made a wrong turn.”


 There is no evidence that Sulak, up to that
point, manifested any intention of arresting Torres. Although Sulak testified that the
deputies were keeping Torres “in custody for me” until he arrived, there is no evidence that
Torres had been exposed to any “custodial interrogation” while sitting in the deputies’ car. 
Under these circumstances, we cannot say that this was an unreasonable length of time
to be temporarily detained while Sulak conducted his investigation.
We hold that Torres was not in custody for purposes of Miranda when initially
questioned by Sulak. Thus, his responses are admissible against him. We overrule
appellant’s first point of error.
          In his last two points of error, Torres contends that because there was no probable
cause for his arrest, the Fourth Amendment of the U.S. Constitution and article I, section
nine of the Texas Constitution require granting his suppression motion. We have already
held that Torres’s initial detention was lawful because the deputies placed him in their car
to await Sulak’s arrival, and Sulak conducted an investigation upon his arrival. An arrest,
on the other hand, occurs when a person’s liberty of movement is restricted or restrained. 
Hoag v. State, 726 S.W.2d 375, 379 (Tex. Crim. App. 1987). 
The “totality of the circumstances” test applies in Texas for determining probable
cause for a warrantless search and seizure. Eisenhauer v. State, 754 S.W.2d 159, 164 
(Tex. Crim. App. 1988). The burden is on the State to prove the existence of probable
cause to justify a warrantless arrest or search. Brown v. State, 481 S.W.2d 106, 109 (Tex.
Crim. App. 1972). Probable cause exists where the facts and circumstances within the
officer’s knowledge and of which the officer has reasonably trustworthy information are
sufficient in themselves to warrant a person of reasonable caution in the belief that a
particular individual has committed or is committing an offense. See, e.g., Woodward v.
State, 668 S.W.2d 337, 345 (Tex. Crim. App. 1982) (op. on reh’g), cert. denied, 469 U.S.
1181 (1985).
          Sulak testified that at some point after arriving at the scene of the accident, the
deputies told him that Torres was very intoxicated. The record does not reflect how the
deputies came to this conclusion. Sulak did not remember whether the occupants of the
residence also mentioned Torres’s condition. At the scene, Sulak did not ask Torres
whether he had been drinking and did not otherwise administer any field sobriety tests. 
There was no testimony concerning Torres’s physical appearance at the scene. After
Torres was treated and released from the hospital, Sulak took him to the sheriff’s office for
questioning and to solicit a breathalyzer test.
          The State argues that the fact that Torres lost control of his car and ran into the front
porch of a residence in the early morning hours, combined with the deputies’ statement that 
Torres was intoxicated, gave Sulak sufficient probable cause to arrest Torres for DWI. In
support of its arguments, the State cites Terry and Sandoval v. State, 35 S.W.3d 763, 766
(Tex. App.–El Paso 2000, pet. ref’d). We disagree.
          In Sandoval, Jara Torres and her family were home celebrating her birthday when
a car crashed into a family member’s car, which was parked in front of the house. 
Sandoval, 35 S.W.3d at 765. Jara ran outside and confronted the driver, who ignored her,
backed up, and drove away. Id. Jara’s husband, Ismael, and others followed the car while
Jara’s sister called the police. Id. As Ismael followed the car, at times it drove against the
flow of traffic. Id. at 766. When the car pulled into a driveway, Ismael followed. Id. Ismael
asked Sandoval, the driver, what had happened. Id. Sandoval replied he had no
recollection of the collision. He had to be helped by his wife into the house because he
could not stand without assistance. Id. 
When the police arrived, Ismael and the others told police what had happened, that
the driver had gone into the house, and that he appeared to be intoxicated. Id. Sandoval’s
wife confirmed to police that her husband had been driving the car and was in the back
yard. Id. She invited the police in, and they found Sandoval sitting in a chair. Id. 
Sandoval confirmed he had been driving and appeared to the officers to be intoxicated. 
Id. The police observed he had bloodshot eyes and unsteady balance. Sandoval was
arrested for driving while intoxicated. Id. 
Unlike the case before us, there were ample articulated facts in Sandoval from lay
witnesses and the police that clearly showed that under the totality of the circumstances, 
Sandoval’s warrantless arrest for driving while intoxicated was reasonable. See id. at 768-69. 
The State further argues that even if there was no probable cause to arrest Torres,
Sulak, acting in his capacity as a community caretaker, was justified in seizing him. See
Corbin v. State, 85 S.W.3d 272, 276-77 (Tex. Crim. App. 2002). Even without reasonable
suspicion or probable cause that an offense has been committed, a police officer may
reasonably seize an individual through the exercise of his community caretaking function. 
Wright v. State, 7 S.W.3d 148, 151-52 (Tex. Crim. App. 1999). The community caretaking
function, however, is “totally divorced from the detection, investigation, or acquisition of
evidence relating to the violation of a criminal statute.” Cady v. Drombowski, 413 U.S. 433,
441 (1973). Accordingly, a police officer may not properly invoke his community caretaking
function if he is primarily motivated by a non-caretaking purpose. See Wright, 7 S.W.3d
at 151. 
The State argues that at the scene, Sulak was concerned with Torres’s injuries,
rather than whether Torres was intoxicated. The record, however, shows the following
exchange during the State’s questioning of Sulak about Torres’s injuries:
[State]: All right. At what point did you determine that he was injured
physically?
 
[Sulak]: I noticed he was supporting his shoulder when we were – after we
left the scene of the accident. In the patrol – in my patrol car, he advised me
that his arm was hurting and we decided to go to the hospital.
Later, the following took place:
[State]: Was there any reason you didn’t take him directly from the accident
scene directly to the intoxilizer room?
[Sulak]: He was complaining of, of injuries so that had to be addressed.
          It is obvious from the record that when Sulak removed Torres from the deputies’ car
and placed him in his car, he did so to take Torres to the intoxilizer room at the sheriff’s
office. On the way to the sheriff’s office, however, Sulak first noticed that Torres was
injured. Under these circumstances, we cannot say that Sulak was primarily motivated by
his community caretaking function when he first took custody of Torres. Sulak’s caretaking
function began after he had already arrested Torres by placing him in his unit to take him
to the sheriff’s office.
          We hold that the trooper did not articulate sufficient facts to support probable cause
to arrest appellant. His warrantless arrest was therefore illegal. We hold that the trial court
erred in denying appellant’s motion to suppress. 
          We REVERSE and REMAND to the trial court for further proceedings.
 
                                                               
 
LINDA YAÑEZ 
                                                                           Justice




Do not publish. Tex. R. App. P. 47.2(b).

Opinion delivered and filed this the
17th day of June, 2004