**Damon Jerome RICHARDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–90–0349–CR.**

Court of Appeals of Texas, Amarillo.

June 28, 1995.

Richard L. Wardroup, Lubbock, for appellant.

Travis S. Ware, Dist. Atty., Michael West, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

## ON REMAND FROM COURT OF CRIMINAL APPEALS

BOYD, Justice.

Appellant, Damon Jerome Richardson, challenges his conviction for the offense of engaging in organized criminal activity for which he was sentenced to confinement for life in the Institutional Division of the Texas Department of Criminal Justice and a $10,-

000 fine. This appeal has been before this court on two previous occasions. *Richardson v. State*, 821 S.W.2d 304 (Tex.App.—Amarillo 1991), *reversed*, 824 S.W.2d 585 (Tex.Crim.App.1992); *Richardson v. State*, 831 S.W.2d 78 (Tex.App.—Amarillo 1992), *reversed*, 865 S.W.2d 944 (Tex.Crim.App.1993). Of the twenty points of error originally asserted, disposition of this appeal now turns on points 4, 5, and 6 in which appellant challenges the legality of evidence obtained by the use of a court-authorized pen register and wiretap. We affirm.

Throughout late 1987 and early 1988 appellant was incarcerated in the Lubbock County Jail awaiting trial for capital murder. While there appellant spent much of his time on telephones provided in the day-room of the cell block in which he was housed at the time. From those telephones he placed collect calls, lasting as long as seven hours, to a telephone at the Seven Acres Lodge, a local motel. At the same time, officers of the Texas Department of Public Safety (DPS) and other law enforcement agencies were investigating a suspected drug trafficking operation involving appellant and the Seven Acres Lodge.

In the course of their investigation, the officers spoke with Chris Buss, another inmate in the same cell block of the Lubbock County Jail with appellant. Buss told the officers that appellant was using the jail telephone to control his cocaine distribution operation. Buss further told the officers that on occasions when he did not have access to the telephone, appellant had asked Buss to call "Loretta" at 744–4729 [1] and relay coded messages to her concerning drug transactions. Buss also overheard several of appellant's calls to "Loretta," who would then arrange multi-party conference calls to others. Using an administrative subpoena from the United States Drug Enforcement Administration (DEA), the officers obtained telephone company records indicating that 744–4729 was the number assigned to the telephone service of Edward Swanson and that the service address was that of the Seven Acres Lodge. The records also showed that, at Swanson's request, 744–4729 was unlisted

---

1. Although Buss initially provided a telephone number which was incorrect by one digit, he subsequently confirmed that 744–4729 was the correct number.

and had been changed from 744–8668 about January 12, 1988.

On March 4, 1988, again pursuant to a DEA administrative subpoena, the officers obtained the billing records for the telephone service at the Seven Acres Lodge for the period of October 11, 1987 through March 1, 1988. These records, which were introduced into evidence and are in the statement of facts, show each of the collect calls from the telephone in the Lubbock County Jail to Seven Acres Lodge for that period and include the date, time, and length of each call. Based largely on the information from Chris Buss and the billing records of 744–4729, Jerry Randall of the DPS sought and obtained an order authorizing the installation of a pen register[2] on the telephone line at the Seven Acres Lodge pursuant to Article 18.21, section 2 of the Texas Code of Criminal Procedure (Vernon Supp.1994). The order authorizing the installation of a pen register was made March 31, 1988.

On April 12, 1988, while the pen register was being operated, Randall made an affidavit in support of an order authorizing the interception of wire communications, as provided by Article 18.20 of the Code of Criminal Procedure, from the same telephone line at the Seven Acres Lodge. In his affidavit, he asserted that eleven named individuals, including appellant, Edward Swanson and Loretta Ward were involved in a conspiracy to deliver cocaine. In support of this assertion, Randall recited detailed information provided by informant Chris Buss. Randall's affidavit also refers to a review of billing records for the telephone at the Seven Acres Lodge from October 11, 1987 through March 1, 1988. This review revealed 555 collect calls from the telephone in the day room of the J–1 cell block of the Lubbock County Jail, where appellant was held, to the telephone at the Seven Acres Lodge. From December 16 through December 28, 1987, while appellant was housed in the F–1 cell

block, the records revealed 17 collect calls from the telephone in that cell block's day room to the Seven Acres Lodge telephone. From February 19 through March 1, 1988 while appellant was housed in the A–1 cell block, 33 collect calls were placed from that cell block's day room to the Seven Acres Lodge telephone. In his affidavit he also recited various pieces of information from confidential informants and other law enforcement officers.

All of the calls discussed above occurred before the State's first application for installation of a pen register. Randall's April 12 affidavit made three substantive[3] references to the pen register installed on the Seven Acres Lodge telephone. The first, on page 15 of the affidavit, states that the pen register was authorized and continued to be operated. The second, on page 26, states that two calls were made from the Seven Acres Lodge telephone to Trammel's Lubbock Bail Bond but neither states nor infers any involvement of appellant. The final reference, on page 50 of the affidavit, notes that the pen register recorded in excess of 1,300 calls from or to the Seven Acres Lodge telephone from March 31 through April 4, 1988 with no discussion of the origin of the incoming calls or destination of outgoing calls.

The State's application for a wiretap was granted on April 13, 1988 by Judge Jack D. Young, 287th District Court, Bailey County. Incriminating evidence obtained as a result of the ensuing wiretap was used in support of subsequent search and arrest warrants and was introduced at appellant's trial. Each of appellant's points of error remaining for our disposition is based on the theory that both the probable cause to obtain the search and arrest warrants and the sufficiency of the evidence to sustain his conviction were dependent on evidence obtained from the wiretap. From this premise, appellant argues that the wiretap was illegal because it was based on evidence obtained as a result of the

---

2. A pen register is defined by statute as a device that "is capable of recording outgoing numbers dialed from that line but is not capable of recording the origin of an incoming communication to that line or the content of a communication ..." Tex.Code Crim.Proc.Ann. art. 18.21, § 1(9) (Vernon Supp.1994).

3. Pages 33 and 48 contain references to the pen register in the titles to relevant sections of the affidavit.

pen register installed on the Seven Acres Lodge telephone. We disagree.

Appellant challenges the constitutionality of article 18.21 of the Texas Code of Criminal Procedure (Vernon Supp.1994), on the theory that installation of pen registers authorized by that article are searches and, because article 18.21 does not require a showing of probable cause, are violative of Article I, section 9 of the Texas Constitution. Our previous opinions disposed of this issue by finding that the installation of a pen register was not a search under Article I, section 9. *Richardson,* 831 S.W.2d at 81; *Richardson,* 821 S.W.2d at 307. The Court of Criminal Appeals granted appellant's petition for discretionary review on this issue and held that the installation of a pen register can be a search under Article I, section 9 and remanded the case to this court for further proceedings. *Richardson,* 865 S.W.2d at 953–54.

As is apparent from both the majority and dissenting opinions from the Court of Criminal Appeals, the question of a telephone user's expectations of privacy in the numbers he dials present difficult and interesting questions. However, a further review of the record of this case reveals that resolution of that question is not necessary to a disposition of this case. There are two reasons this is so.

First, the finding of probable cause to support the wiretap order was not based on evidence obtained from the pen register installed on the telephone line at the Seven Acres Lodge. As noted above, the extensive affidavit of Jerry Randall in support of the wiretap made only three references to the pen register. One noted its existence, the second revealed two calls to a bail bonding company and the third concerned only the total number of calls. All of the information concerning appellant's calls to the Seven Acres Lodge came from Chris Buss, confidential informants corroborated by Buss, and the telephone billing records subpoenaed by the DEA. As also noted above, all of the information from the billing records concerned a period before the pen register was installed on the Seven Acres Lodge telephone line. The use of an administrative subpoena to obtain telephone billing records is authorized by section 2703(c)(1)(B)(i) of title 18 of the United States Code. Appellant has made no challenge that the requirements of that statute were not met, or that those records are inadmissible due to the statute's unconstitutionality. The affidavit of Jerry Randall in support of the State's application for a wiretap was sufficient to support a finding of probable cause independent of any evidence from the previously installed pen register. *Brown v. State,* 605 S.W.2d 572, 577 (Tex.Crim.App.1980).

■ Secondly, because the pen register did not record the origin of appellant's calls, he has no standing to challenge installation of the pen register. In addressing the legal question of a telephone user's privacy interest in the numbers he calls, the Court of Criminal Appeals accepted appellant's contention that the pen register installed at the Seven Acres Lodge logged the origin of his calls from the jail. *Richardson,* 865 S.W.2d at 947, n. 2. Examination of the record reveals that appellant's assertion on this issue is incorrect. At trial, Randall was specifically asked whether the pen register was capable of recording the telephone number of incoming calls and testified that it was not. The March 3, 1988 order of the 140th District Court only authorized the installation of a pen register. If the device installed by police was capable of recording the origin of incoming calls, it would have been a trap and trace device as defined by article 18.21, section 1(14) of the Code of Criminal Procedure (Vernon Supp.1994). If the police had installed a trap and trace device in addition to a pen register, they would have been acting beyond the authority of the March 3 order. Not only is there no evidence that the police installed a trap and trace device, appellant has presented no complaint at trial or on appeal that the police were acting other than in compliance with the order. Any such complaint has been waived.

■ We do, however, note Randall's testimony that the device installed by his department would "indicate each time the telephone is picked up from the receiver" and "will show that there was an incoming call. Both times it will show what time the receiver was picked up, what time it was placed back on

the hook." By recording the existence, time and duration of incoming calls, capabilities not within the statutory definition of a pen register, the police acted beyond the authority of the authorizing order. Again however, no complaint concerning this issue was preserved for appeal.

■ Appellant has not specifically challenged the use of a federal administrative subpoena to obtain the telephone billing records of Edward Swanson as violative of his rights under the fourth amendment or Article I, section 9 of the Texas Constitution. However, in light of his broad challenges to the admissibility of evidence used in support of the wiretap order, the importance of those billing records as support for the wiretap order, and in the interest of justice, we will briefly address that issue.

As explicated by the Court of Criminal Appeals, the question of standing to challenge a search is integral with the question of whether a search has occurred. *Richardson,* 865 S.W.2d at 948. This is so because both depend on the existence of a reasonable expectation of privacy by the defendant. *Richardson,* 865 S.W.2d at 948; *Chapa v. State,* 729 S.W.2d 723, 727 (Tex.Crim.App.1987) (citing *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Therefore, any claim that the police use of Edward Swanson's billing records violated appellant's rights under the federal or Texas Constitutions is dependent on whether appellant had an expectation of privacy in the billing information of Swanson and if so, whether that expectation is "one that society is prepared to recognize." *Richardson,* 865 S.W.2d at 948–49. We find that he did not.

In the case of *Stephens v. State,* 834 S.W.2d 94 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd), the First Court of Appeals held that a defendant does not have a privacy interest in the telephone records of another. *Id.* at 96. There, police obtained telephone records, pursuant to a court order, indicating the destination of calls forwarded from a telephone line not subscribed to by the defendant. These records showed that the defendant's telephone was the ultimate destination of the forwarded calls. In response to the defendant's challenge to the legality of the State's use of the records, the court held that the defendant lacked standing to challenge use of the telephone records because he lacked any privacy interest in the records. Although the *Stephens* case was decided, and petition for discretionary review refused, after *Heitman v. State,* 815 S.W.2d 681 (Tex. Crim.App.1991), those events occurred before the Court of Criminal Appeals' most recent opinion in this case. Therefore, we will engage in a more detailed analysis of appellant's standing.

As noted, determination of standing contains both subjective and objective elements. Appellant must have had an actual expectation of privacy in the information sought at issue, and that expectation must be objectively reasonable. Determination of a person's actual expectation of privacy is to be measured by the person's conduct. *Richardson,* 865 S.W.2d at 948; *Chapa v. State,* 729 S.W.2d at 727. As the Court of Criminal Appeals' previous opinion in this case made clear, disclosure to the telephone company, an act that is not entirely voluntary given importance of telecommunications in our society, cannot be treated as conduct indicating that a caller has no expectation of privacy in the number called. *Richardson,* 865 S.W.2d at 953. The disclosure of that information to others when disclosure was not necessary to make the call, however, can be evidence that the caller had no actual expectation of privacy.

Here, appellant disclosed the fact that he was placing calls to the Seven Acres Lodge in two ways. First, his calls were collect. By placing collect calls he asked the telephone company not only to complete the call, but to charge the recipient for the cost of the call, which in turn required disclosure of the call's origin on the recipient's telephone bill. This type of call is clearly an exception to the observation of the Court of Criminal Appeals that "we share a common understanding that the numbers we call remain our own affair, and will go no further."[4] *Id.* at 953. The

---

4. The recent advent of caller identification services, where the telephone company conveys information about the origin of each call to the call's recipient, brings into question the contin-

record does not reveal whether collect calls were the only calls that could be made from the jail telephones, or if appellant used collect calls for convenience.

There is, however, additional evidence that appellant did not have an expectation of privacy in the existence of these calls. Appellant made disclosures of the information to Chris Buss and other inmates. Appellant's conduct of giving Buss the telephone number of the Seven Acres Lodge, instructing him to call the number and pass information to "Loretta," and placing similar calls himself in the presence of Buss and other inmates is the type of general or indiscriminate disclosure that the court held can indicate the absence of an expectation of privacy. We hold that appellant failed to meet his burden to show that he had an expectation of privacy in his calls to the Seven Acres Lodge. *See Calloway v. State,* 743 S.W.2d 645, 650 (Tex. Crim.App.1988); *Wilson v. State,* 692 S.W.2d 661, 671 (Tex.Crim.App.1984).

While this holding is dispositive of the question of appellant's standing to challenge the State's use of Edward Swanson's telephone records, we additionally find that any expectation of privacy in the fact of appellant's telephone calls is not one that society is prepared to accept as reasonable. As this case poignantly illustrates, the need for jail and prison administrators to maintain order [5] and prevent criminal activity requires a greater ability to monitor the activities of inmates that would be permitted by police in society at large. This necessity has been recognized before. *Hudson v. Palmer,* 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Thomas v. Allsip,* 836 S.W.2d 825, 828 (Tex.App.—Tyler 1992, no pet.).

We do not believe that preventing inmates from asserting a privacy interest in the fact that they place a call to a particular destination unnecessarily interferes with the rights retained by an inmate, such as the right to counsel. Disclosure of the fact that a defendant has spoken with his counsel on the telephone presents no greater interference with the right to counsel than does a personal meeting between a defendant and his counsel at the jail, an event which is normally recorded by jail personnel. This does not mean, however, that information in which an expectation of privacy is denied out of necessity to maintain institutional order or prevent crime is also at the disposal of prosecutors for purposes of analysis to divine defense strategy or for some other purpose.

Finding that appellant had neither a subjective nor objective expectation of privacy in the existence of his calls to the Seven Acres Lodge, we hold that he lacks standing to contest the acquisition or use of the billing records used in support of the affidavit for the April 13 wiretap order.

Finally, we must apply the foregoing holdings to the disposition of appellant's remaining points of error.[6] Because the record affirmatively shows that the pen register installed on the telephone line at the Seven Acres Lodge did not record any of appellant's calls to that telephone, appellant lacks standing to complain of the evidence acquired by that device or the constitutionality of the statute authorizing its installation. Consequently, his fourth and fifth points of error are overruled. Based on this lack of standing, and the fact that Jerry Randall's April 12, 1988 affidavit was not based on the results of the pen register, appellant's sixth point of error arguing that the wiretap order was dependent on the results of the illegally obtained pen register information is also overruled.

Appellant's third, seventh, eighth, ninth, tenth, eleventh, sixteenth and eighteenth points are each dependent on the legality of the wiretap order. Our disposition of appellant's fourth and fifth points of error also require us to overrule each of these points, and we hereby do so. In final summary, all

ued vitality of the common understanding referred to in the court's opinion. *See* Tex.Rev.Civ. Stat.Ann. art. 1446c § 87C (Vernon Supp.1995).

5. The *record* reveals one fight within the jail over appellant's use of the telephone to the exclusion of other inmates.

6. Our original disposition of appellant's first, second, twelfth, thirteenth, fourteenth, fifteenth, seventeenth, nineteenth, and twentieth points of error were unaffected by the Court of Criminal Appeals' subsequent opinions.

of appellant's points are overruled and the judgment of the trial court is affirmed.