TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00456-CR






Manuel Joseph Hernandez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 9034113, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 Manuel Joseph Hernandez appeals from his conviction for burglary of a habitation. 
See Tex. Pen. Code Ann. § 30.02(a) (West 2003). After the jury returned its guilty verdict, appellant
pled true to the enhancement allegations (1) in the indictment and the jury assessed punishment at
ninety-nine years' confinement in the Texas Department of Criminal Justice-Institutional Division,
as well as a $10,000 fine. In four issues, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction, urges that the State improperly attempted to shift the burden of
proof to appellant, and asserts that the court erred in admitting an audiotape. We will affirm the
conviction.

Background


 On August 21, 2001, Ms. Ardis Meschke discovered that items were missing from
the master bedroom of her home: her husband's watch, her camera, and two jewelry boxes. Because
she did not sleep in that room, she was not sure when the items disappeared. After discovering the
theft, Meschke called the police. She was able to find the box in which the 35-mm camera was
originally packed and supply the police with its serial number. She told the police that a burglar
might have been able to get into her house by crawling under the garage door, which she kept slightly
open for ventilation.

 David Johnson, a deputy for the Travis County Sheriff, responded to Meschke's call. 
Johnson testified that he identified the garage door as a possible point of entry because it had been
left open so that it was about twelve to sixteen inches off the ground. Appellant's fingerprints were
not found in the house.

 Craig Moore, another deputy, was assigned to investigate the burglary. He testified
that the Austin Police Department maintains a database that allows investigators to search all
pawnshops in the Travis County area. Moore entered the camera's serial number in the database; 
the search result showed him the camera type, the person who pawned it, when it was pawned, and
the name of the pawnshop. Moore then went to the pawnshop to retrieve the camera. While at the
pawnshop, he examined the paperwork that the person who pawned the item had to fill out. By law,
pawnshops must obtain photographic identification from every customer, and must document the
information. After reviewing this information, Moore determined that appellant pawned the camera.

 The manager of the pawnshop, Juan Castro, testified that anyone who wants to pawn
an item must display a valid identification and photograph. The pawnshop has an interest in
verifying that the identification is valid because the shop does not receive compensation from the
state when the authorities confiscate stolen property. Castro testified that he found documentation
for a camera with a serial number of 8613197, which had been pawned on August 17, 2001. On this
document, the identification number for the customer was 07882464, and the person's name was
listed as Manuel Joseph Hernandez, Jr. This information corresponds to the name and driver's
license on appellant's identification. Castro testified that before this incident, appellant had been at
the pawnshop five times to pawn other items; he eventually redeemed most of those items. The
pawnshop was located no more than four miles from Meschke's residence.


Discussion



Sufficiency of the Evidence


 In his first two issues, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. Under a legal sufficiency review, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
309 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The sufficiency of the
evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not
establish the guilt of the accused. Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). 
The jury as trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility
of the witnesses, and to determine the weight to be given any particular evidence. See Jones v. State,
944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

 In a factual-sufficiency review, the reviewing court "views all the evidence without
the prism of 'in the light most favorable to the prosecution,'" and sets aside the verdict only if it is
"so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In such a review, the court asks whether a
neutral review of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is too weak or that the contrary evidence is too strong to rationally support a finding of guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). In other
words, considering all the evidence in a neutral light, we determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt. Id. A court reviews the evidence weighed by
the jury that tends to prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact. Johnson, 23 S.W.3d at 7. Appellate courts are not free to
reweigh the evidence and set aside a jury verdict merely because the reviewing judges feel that a
different result is more reasonable. Clewis, 922 S.W.2d at 135. A factual-sufficiency review must
employ appropriate deference to the fact-finder's role as the sole judge of the weight and credibility
to be given to witness testimony. Johnson, 23 S.W.3d at 7.

 Evidence can be both factually and legally sufficient for a conviction even if it is
entirely circumstantial. King v. State, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). The standard
of review for circumstantial and direct evidence is the same. Id. It is not necessary that every fact
point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating circumstances. Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993).

 Burglary of a habitation occurs when a person, without the effective consent of the
owner, enters a habitation, or a building (or any portion of a building) not then open to the public,
with intent to commit a felony, theft, or an assault. Tex. Pen. Code Ann. § 30.029(a) (West 2003). 
Burglarious entry can be proven solely through circumstantial evidence. Gilbertson v. State, 563
S.W.2d 606, 608 (Tex. Crim. App. 1978); see Tabor v. State, 88 S.W.3d 783, 786-87 (Tex.
App.--Tyler 2002, no pet.). In cases in which there is independent evidence of a burglary, the
unexplained personal possession of recently stolen property may constitute sufficient evidence to
support a conviction. See Chavez v. State, 843 S.W.2d 586, 587 (Tex. Crim. App. 1992); Tabor, 88
S.W.3d at 786. Mere possession of stolen property does not give rise to a presumption of guilt, but
rather it will support an inference of guilt of the offense in which the property was stolen. Hardesty
v. State, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). To warrant an inference of guilt based solely
on the possession of stolen property, it must be established that the possession was personal, recent,
and unexplained. Tabor, 88 S.W.3d at 786. Also, the possession must involve a distinct and
conscious assertion of right to the property by the defendant. Id. If the defendant offers an
explanation for his possession of the stolen property, the record must demonstrate the account is
false or unreasonable. Adams v. State, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a
defendant's explanation for possession of recently stolen property is true or reasonable is a question
of fact to be resolved by the trier of fact. Tabor, 88 S.W.3d at 786.

 Viewing the evidence in the light most favorable to the verdict, the State established
the elements of the offense of burglary. Meschke testified that she did not give appellant permission
to enter the house. Appellant could have entered the home through a garage door that was left twelve
to sixteen inches off the ground. The camera that appellant pawned had the same serial number as
the one stolen from Meschke's residence and was pawned at a location in close proximity to that
residence. Appellant offered no explanation for his possession of the recently stolen camera. His
act of pawning the camera was a conscious assertion of right to the property. See Tabor, 88 S.W.3d
at 786. The "combined and cumulative" force of these incriminating circumstances leads to the
conclusion of appellant's guilt. See Johnson, 871 S.W.2d at 183. A rational trier of fact could have
found all the elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319.

 The evidence was also factually sufficient. Appellant argues that the time differential
between pawning the camera on August 17 and the discovery of the missing items on August 21
invalidates the jury's finding. Meschke testified, however, that she did not sleep in the master
bedroom and sometimes does not notice the dresser. She said she did not notice anything unusual
until she looked at the dresser on August 21 and noticed her jewelry boxes missing. Appellant also
argues that there was no evidence that he pawned any of the other items taken from the crime scene. 
However, Moore testified that burglars usually do not pawn all of the stolen items at the same
pawnshop. Further, when items do not have serial numbers, they are almost impossible to locate. 
Because none of the other stolen items had a serial number, it was rational for the jury to infer that
none of the other items would be recovered, rather than inferring that appellant did not commit the
offense because only one of several items was recovered.

 Appellant also basically argues that the jury should have drawn an inference that he
did not know that the camera was stolen. He urges that the pawnshop staff followed their standard
identification procedures, and that if he had been acting suspiciously, the transaction would not have
occurred. In other words, his behavior evidenced a lack of consciousness of guilt. Appellant argues
that he showed that he had a history of redeeming his property after economic considerations had
forced him to pawn it. However, past legitimate conduct is not an explanation for his possession of
Meschke's recently stolen camera.

 A gap between the actual burglary and the discovery of the appellant's possession of
the stolen items is not fatal to a conviction. See Williams v. State, 621 S.W.2d 613 (Tex. Crim. App.
1981). The court said that "[e]vidence that the appellant had the exclusive, unexplained possession
of this property recently stolen is sufficient to sustain the conviction." Id. at 614. Similarly,
appellant had the exclusive possession of the stolen item at the time he took it to the pawnshop. He
provided no explanation for how he obtained it. Had appellant pawned the item after the burglary
was discovered, it would have been more reasonable to infer that he might have obtained the item
in a way other than through the burglary. After examining all of the evidence, both for and against
the finding, we cannot say that the proof of guilt is so obviously weak as to undermine confidence
in the jury's determination or that the proof of guilt is greatly outweighed by contrary proof. See
Johnson, 23 S.W.3d at 11. We overrule appellant's first and second issues.


Improper Jury Argument


 In his third issue, appellant contends that the State improperly attempted to shift its
burden of proof onto appellant during the State's jury argument. Texas courts recognize four areas
of jury argument: (1) summations of the evidence; (2) reasonable deductions from the evidence; (3)
responses to the defense counsel's argument; and (4) pleas for law enforcement. Lagrone v. State,
942 S.W.2d 602, 619 (Tex. Crim. App. 1997). A prosecutor cannot comment on a defendant's
failure to testify at trial, but commenting on a defendant's failure to present other types of testimony
is permissible. Wolfe v. State, 917 S.W.2d 270, 279 (Tex. Crim. App. 1996). Courts do not imply
meanings into the prosecutor's words: "That such language might be construed as an implied or
indirect allusion to the defendant's failure to testify is not enough to warrant exclusion." Id. A
prosecutor may rebut defense counsel's argument that the State failed to carry its burden of proof 
as long as the prosecutor does not refer to the defendant's failure to testify. See Jackson v. State, 17
S.W.3d 664, 674 (Tex. Crim. App. 2000). In the closing arguments in Jackson, the defense counsel
implied that the prosecutor's DNA witness lied about the results, and the prosecutor responded: 
"They can sit there like potted plants. But don't you know if there was something wrong, they would
have had one of those experts on the stand to tell you that that evidence wasn't B type. And you can
make an inference from that." Id. The court held that his argument did not shift the burden of proof
to the defense.

 The following exchange is the basis for appellant's claim:


Prosecutor: Because you can have a doubt, but your doubt has to be based
on reason. You have got to be able to articulate that doubt, and
it's got to make sense. Could that camera have fallen from the
sky and landed in Mr. Hernandez's hands? That doesn't make
sense.


Defense Counsel: I'm sorry. Again, I'm going to object to this line of argument
as commenting on the failure of the accused to testify - - 


Court: Overrule the objection.


Defense Counsel: - - in the Court's charge.


Court: Overruled to that. Thank you. You may proceed.


Prosecutor: Could the camera have just been found on the side of the road? 
These things don't happen. Don't you know folks - - the
defense does not have to put on any evidence. Don't you know
if someone had given that camera to the defendant they
have subpoena power. They can go find them with an
investigator - - 


Defense Counsel: I'm sorry. I object. This line is an impermissible assertion of
the fact that the defense has any burden of proof in this case at
all.


Prosecutor: I prefaced my comment, Your Honor.


Court: Overruled.



 This exchange presents a situation similar to Jackson. Defense counsel attempted to
argue that the State failed to carry its burden of proof that the appellant stole the camera. The
prosecutor never said that the defendant had to present a case. Indeed, she directly stated that "the
defense does not have to put on any evidence." As in Jackson, she was pointing out that the
defendant had the power to present witnesses that would exonerate him about how he came to
possess the stolen camera. Accordingly, the trial court did not err in overruling the objection to the
prosecutor's argument. We overrule appellant's third issue.


Taped Telephone Calls


 In his fourth issue, appellant challenges the admission during the punishment phase
of recordings of two telephone calls made to the same number (not to his attorney) while he was in
jail. He contends the admission violated both the United States and Texas Constitutions and article
18.20 of the Texas Code of Criminal Procedure. (2)

 The Fourth Amendment serves to safeguard an individual's privacy from
unreasonable governmental intrusions. Richardson v. State, 865 S.W.2d 944, 948 (Tex. Crim. App.
1993). A defendant may challenge the admission of evidence obtained by such governmental
intrusion only if he had a legitimate expectation of privacy in the place invaded. Rakas v. Illinois,
439 U.S. 128, 143 (1978). A two-pronged test is used to determine if a person had a reasonable
expectation of privacy: (1) whether the person's conduct exhibited a subjective expectation of
privacy, and (2) whether the person's subjective expectation of privacy is one that society is willing
to recognize as reasonable. Smith v. Maryland, 442 U.S. 735, 740 (1979) (citing Katz v. United
States, 389 U.S. 347, 361 (1967)); Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996);
Meyer v. State, 78 S.W.3d 505, 507 (Tex. App.--Austin 2002, pet. ref'd).

 Whether a subjective expectation of privacy is one that society recognizes as being
reasonable is a question of law. Villarreal, 935 S.W.2d at 138 n.5; see also Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997) (questions of law reviewed de novo). Among the factors to
be considered in making this determination are whether the accused: (1) had a property or
possessory interest in the place invaded; (2) was legitimately in the place invaded; (3) had complete
dominion or control and the right to exclude others; (4) before the intrusion, took normal precautions
customarily taken by those seeking privacy; (5) put the place to some private use; and (6) has a claim
of privacy consistent with historical notions. Calloway v. State, 743 S.W.2d 645, 651 (Tex. Crim.
App. 1988).

 In general, however, "society is not prepared to recognize as legitimate any subjective
expectation of privacy that a prisoner might have in his prison cell." Hudson v. Palmer, 468 U.S.
517, 525-26 (1984). The court added that it believed that our society accepts that loss of freedom
of choice and privacy are inherent incidents of confinement. Id. at 528.

 In State v. Scheinman, the court of criminal appeals held admissible the recording of
a conversation between defendant Trevino and a co-defendant while in jail. 77 S.W.3d 810, 811
(Tex. Crim. App. 2002). Trevino asked to speak alone with his co-defendant. The deputy allowed
the two to move into one room and left them alone. Id. They began to discuss their actions in the
attempted burglary for which they were arrested. This conversation was recorded. Id. Trevino
argued that the deputy's actions lulled the two into believing that the conversation was private, and
thus raised a legitimate expectation of privacy. Id. It was undisputed that neither co-defendant knew
that the conversation was being recorded. Id. After stating the proposition that society in general
is not prepared to recognize as reasonable an arrestee's subjective expectation of privacy concerning
conversations that occur in jail, the court of appeals nevertheless had held that the actions of police
created the expectation that the conversation was private. Id. at 812. It noted that the recording was
made purely for evidence gathering purposes and held that society should not condone the use of
misrepresentation to allow the police to gather evidence. Id.

 The court of criminal appeals disagreed. It noted that there was no allegation or
evidence of any oral assurances of privacy, nor was this a situation in which a suspect was
threatened, tricked or cajoled in waiving his Fifth Amendment privilege. Id. The court held that it
did not believe that society is prepared to recognize a legitimate expectation of privacy in
conversations between arrestees who are in custody in a county law enforcement building. Id.

 Meyer v. State involved a challenge to the admission of the audio portion of a video
recording made while the defendant was talking to himself while seated in the back seat of a police
car after having his rights read to him. 78 S.W.3d at 506. The car doors were closed and the
windows were shut. Appellant argued that the officers' actions led him to believe that his musings
would be private. Id. at 507. The court cited numerous cases that held that there is no reasonable
expectation of privacy in the back seat of a police car. Id. at 508. It noted that appellant was in
custody, handcuffed, and confined in a police car and could expect his movements and statements
to be monitored. Id. The court concluded that appellant had no reasonable expectation of privacy. 
Id.

 Along with the back seats of police cars and jailhouse conversations, some categories
of telephone calls from jail have been held to lack the protection of a reasonable expectation of
privacy. See United States v. Van Poyck, 77 F.3d 285, 290 (9th Cir. 1996) (society is not objectively
prepared to recognize an expectation of privacy from the recording of outbound jail phone calls to
a non-attorney, especially in light of institutional safety). As stated in Richardson v. State, "the need
for jail and prison administrators to maintain order and prevent criminal activity requires a greater
ability to monitor the activities of inmates that would be permitted by police in society at large." 902
S.W.2d 689, 694 (Tex. App.--Amarillo 1995, no pet.) (running illegal drug operation by phone calls
from prison) (citing Hudson v. Palmer, 468 U.S. 517, 529 (1984)).

 In this case, appellant complained of the recording of two of his outbound phone
calls. The evidence showed that the telephone system that inmates are allowed to use informs the
callers that all calls are subject to being monitored. Not only did appellant have a diminished
expectation of privacy because of his confinement, he was specifically warned that use of that
particular telephone system was monitored. There was no evidence that appellant could not hear the
warning, did not understand the warning, or that the system suffered from a problem at the point at
which appellant made his calls such that a warning was not given. Accordingly, we hold that
appellant's Fourth Amendment rights were not violated as he did not have a reasonable expectation
of privacy regardless of his subjective expectation.

 Appellant also argues that the interception of his calls violated the wiretapping statute. 
See Tex. Code Crim. Proc. Ann. art. 18.20. In interpreting the Texas statute, it is appropriate to
consider the interpretation of the federal statute on which it was modeled. Meyer v. State, 78 S.W.3d
at 509; Ex parte Graves, 853 S.W.2d 701, 705 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd). 
The legislative history of the federal statute reveals that Congress' intent was to protect persons
engaged in oral communications under circumstances justifying an expectation of privacy. United
States v. McIntyre, 582 F.2d 1221, 1223 (9th Cir. 1978). Because we have already held that
appellant had no reasonable expectation of privacy, we hold that the recording of his calls did not
violate the wiretapping statute. The admission of those phone calls was not error. We overrule
appellant's fourth issue.

Conclusion



 We have overruled all of appellant's issues. We affirm the trial court's judgment.



 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear


Affirmed


Filed: August 26, 2005


Do Not Publish
1. The indictment alleged that appellant had previously been convicted of one count of burglary
of a habitation and two counts of indecency with a child by exposure.
2. Appellant does not assert that Article I, Section 9 of the Texas Constitution gives him any
different rights than the Fourth Amendment of the United States Constitution. Accordingly, we
discuss them as one. See Sandoval v. State, 35 S.W.3d 763, 769 (Tex. App.--El Paso 2000, pet.
ref'd).