Affirmed and Memorandum Opinion filed February 14, 2006









Affirmed
and Memorandum Opinion filed February 14, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01165-CR

NO.
14-05-00165-CR

____________

 

LARRY CASEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 12th
Judicial District Court

Walker County, Texas

Trial Court Cause Nos. 22166
& 22168

 



 

M E M O R A N D U M  O P I N I O N

A jury convicted appellant, Larry Casey,
of solicitation to commit capital murder of Bert Graham and David Sheetz and
assessed punishment at life in the Texas Department of Criminal Justice,
Institutional Division and a $10,000 fine. 
See Tex. Pen. Code Ann.
' 15.03 (Vernon
2003), ' 19.03 (Vernon
Supp. 2005).  In two points of error,
appellant alleges (1) the trial court erred by denying his motion to suppress
and (2) the evidence is legally and factually insufficient to support
conviction.  We affirm.  

 








Factual and
Procedural Background

At various times between 2001 and 2004,
appellant bunked near inmate Jerry Hocutt at the Wynne Unit of the Texas
Department of Criminal Justice.  Both
appellant and Hocutt were serving time in prison for murder.  Sometime in the spring of 2003, appellant and
Hocutt discussed appellant=s desire to have
Bert Graham, First Assistant District Attorney for Harris County, and David
Sheetz, a Houston police officer, killed. 
Hocutt approached  a prosecutor
teaching a business law class at the Wynne Unit and discussed whether Hocutt
could get in trouble for knowing about appellant=s intention if it
actually happened.  The prosecutor set up
a meeting between Hocutt; Richard Lee, a police investigator with the Wynne
Unit; and an assistant district attorney in Harris County.  Lee developed a sting operation to verify
whether Hocutt was telling the truth and to prevent these potential murders. 

Lee asked Hocutt to get appellant to agree
to use Hocutt=s services of a Ahit man,@ which he
did.  No contact occurred between Hocutt
and Lee for the next several months. 
Once Hocutt believed appellant was serious, Gary Johnson, an
investigator with the Harris County District Attorney=s office, was
assigned to help with the investigation. 
Johnson posed as a hit man, named ADok Walker.@  Hocutt wrote a fake letter to AWalker@ asking AWalker@ to meet Hocutt at
the prison.  Lee arranged this meeting
between Johnson/AWalker@ and Hocutt, so
appellant would believe Hocutt had really contacted a hit man.  Hocutt informed appellant the fee for this
hit would be $100,000 for Graham and $25,000 for Sheetz.  Hocutt agreed to pay the fee to the hit man
through his contacts with a drug cartel if appellant would agree to kill two
people of Hocutt=s choosing after appellant was released
from prison.  Appellant agreed, and
Hocutt arranged for appellant to meet with 
Johnson posing as ADok Walker@ on December 3,
2003. 

Prior to December 3, Lee had a recording
device placed in the visitation building where Johnson and appellant met.  Johnson also wore a recording device on his
left forearm as a back up.  On December
3, Johnson met with appellant and recorded their conversation. 








 Thereafter, appellant was charged with two
counts of solicitation to commit capital murder.  Prior to his jury trial, appellant filed a
motion to suppress the tape recording. 
The trial court held a suppression hearing, but the record before this
court does not include a transcript of that proceeding.  At trial, a jury found appellant guilty of
both counts as charged in the indictment and assessed punishment at life and a
$10,000 fine. 

Discussion

I.                   
Motion to Suppress Audio Tape

In his first point of error,
appellant alleges the trial court erred by denying his motion to
suppress an audio tape of a conversation between appellant and Gary
Johnson.  Appellant argues (1) he had a
legitimate expectation of privacy, (2) no order authorized the interception of
the audio tape, and (3) no immediate life-threatening situation justified the
installation of the recording device. 
For the reasons set forth below, we consider appellant=s first argument and hold appellant has
not preserved his second and third arguments for appellate review.

A.                
Expectation of Privacy








In his first argument for
this point of error, appellant contends he held an expectation of privacy in
the location where the recording was made. 
We review the trial court=s
ruling on a motion to suppress evidence under an abuse of discretion
standard.  See Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
If supported by the record, a trial court=s
ruling on a motion to suppress will not be overturned.  Hill v. State, 902 S.W.2d 57, 59 (Tex.
App.CHouston
[1st Dist.] 1995, pet. ref=d).  At a suppression hearing, the trial judge is
the sole finder of facts.  Arnold v.
State, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993); Hill, 902 S.W.2d at
59.  We give almost total deference to
the trial court=s
determination of historical facts that the record supports, especially when the
trial court=s
findings turn on evaluating a witness=s
credibility and demeanor.  State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We give the same amount of deference to the
trial court=s ruling
on mixed questions of law and fact if the question is resolved by evaluating
credibility and demeanor.  Id.  We consider de novo issues that are
purely questions of law.  Id.  If the trial court=s
ruling is reasonably supported by the record and is correct on any theory of
law applicable to the case, the reviewing court will sustain it upon
review.  Villarreal, 935 S.W.2d at
138.  In this case, the trial court made
findings of fact, and therefore, we give almost total deference to the trial
court=s
determination.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We review de novo the trial court=s
application of relevant Fourth Amendment standards.  Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).  

In general, an inmate in
prison has no legitimate expectation of privacy, which society is prepared to
recognize.  Hudson v. Palmer, 468
U.S. 517, 525B26, 104
S. Ct. 3194, 3200 (1984).  The loss of
freedom of choice and privacy are inherent incidents of confinement.  Hudson, 468 U.S. at 528, 104 S. Ct. at
3201.  Here, appellant met with Johnson
in an administrative segregation booth located in the visitation building used
for visiting with family and other approved persons on visitation days.  The visiting room in this building consists
of two long lines of chairs separated by a counter and a chained fence-like
barrier.  The administrative segregation
area consists of approximately six wire cages on the offenders= side of the room where a single
offender can be separated from the rest of the offenders and still visit with
someone on the visitor=s
side of the room.  On December 3, 2003,
the guard escorted appellant to the visitation room and placed him in one of
the wire-cage administrative segregation booths.  








The physical make-up of this
visitation area comports with most other areas in prison where no reasonable
expectation of privacy exists.  See,
e.g., State v. Scheinman, 77 S.W.3d 810, 813 (Tex. Crim. App. 2002)
(affirming the admissibility of a recording made between defendant and
co-defendant when speaking alone while in jail); Richardson v. State,
902 S.W.2d 689, 694 (Tex. App.CAmarillo
1995,  no pet.) (holding expectation of
privacy in outbound telephone calls from prison is not one society is prepared
to accept as reasonable); Ex parte Graves, 853 S.W.2d 701, 706 (Tex.
App.CHouston
[1st Dist.] 1993, pet. ref=d)
(holding no reasonable expectation of privacy exists when speaking between
cells to another prisoner).  Appellant
and Johnson held their conversation in what is normally a heavily populated
area where anyone nearby may overhear.

In its conclusions of law,
the trial court found the administrative segregation visitation area was not a
constitutionally protected area.  We
agree with the trial court=s
assessment and hold no expectation of privacy existed in the administrative
segregation visitation area, which society is willing to accept as legitimate. 

B.                
Order Authorizing the Interception & Emergency
Installation

In his second argument,
appellant contends no order under the federal or Texas wiretap statutes
authorized recording appellant=s
conversation with Johnson.  In his third
argument, appellant contends no immediate life-threatening emergency existed to
justify installation of the recording device in the administrative segregation
visitation area as provided by the federal or Texas wiretap statutes.  Appellant has not preserved error for these
arguments because the objections at trial do not comport with the complaint on
appeal, nor does the motion to suppress raise the federal or Texas wiretap
statutes as reasons to suppress the recording between appellant and
Johnson.    

To preserve error, appellant
could have raised these wiretap issues in his motion to suppress.  A motion to suppress is a specialized
objection to the admission of evidence.  See
Martinez v. State, 17 S.W.3d 677, 682B83
(Tex. Crim. App. 2000).  Appellant=s motion to suppress raises two points,
due process and expectation of privacy. 
The arguments in appellant=s
motion differ from the complaint on appeal. 
Appellant has failed to preserve these wiretap issues for review with
his motion to suppress.  See Wilson v.
State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (holding issues not
preserved because objection at trial does not comport with issues raised on
appeal); McLendon v. State, 167 S.W.3d 503, 510 (Tex. App.CHouston [14th Dist.] 2005, no pet.)
(same). 








Appellant could have also
preserved this issue for appellate review if raised during the suppression
hearing, even if omitted from the motion to suppress.  See Gallups v. State, 151 S.W.3d 196,
197B98 & n.1 (Tex. Crim. App. 2004)
(holding the issue of consent was not waived, though not included in defendant=s written motion to suppress, because
the issue was actually litigated at the suppression hearing).  Appellant bears the burden to bring forth a
record on appeal to show error requiring reversal.  Lape v. State, 893 S.W.2d 949, 960
(Tex. App.CHouston
[14th Dist.] 1994, pet. ref=d).  Appellant may have raised this issue during
the suppression hearing, but we have no way of knowing if that was done.  The trial court held a hearing on the motion
to suppress, but the record does not include a transcript of that proceeding.[1]  Without a transcript of the proceeding, we do
not know what additional objections may have been made during the suppression
hearing.  We can only presume they were
the same as the objections raised by defense counsel at trial.  Because the record contains no transcript of
the suppression hearing, appellant fails to provide an adequate record for our
review.  








Appellant=s counsel did bring the issue of this
recording to the court=s
attention during trial, once during the cross-examination of Richard Lee and
again when the State played the recording for the jury.  During the cross-examination of Lee, defense
counsel argued no one obtained a warrant to record the conversation between
appellant and Johnson, and no probable cause existed to obtain a warrant
because Hocutt was not a reliable informant. 
When the State played the tape for the jury, defense counsel also
renewed all previous objections without specifically identifying those objections.  The objections made at trial are not the same
as those raised in appellant=s
second and third arguments for this point of error.  An objection at trial not comporting with the
complaint on appeal does not preserve error for appellate review.  Guevara v. State, 97 S.W.3d 579, 583
(Tex. Crim. App. 2003); McLendon, 167 S.W.3d at 510.  Therefore, appellant has not preserved
error.  

If, however, we were to
broadly construe appellant=s
counsel=s
argument at trial pertaining to a Awarrant@ as comporting with the argument on
appeal for an order under the federal and Texas wiretap statutes, we overrule
appellant=s second
argument for this point of error.  See
18 U.S.C. ''
2510 et seq. (2000); Tex. Code Crim. Proc.
Ann. art. 18.20 (Vernon Supp. 2005); 
Tex. Pen. Code Ann. ' 16.02 (Vernon 2003).  The record shows no one filed an application
for an order to record appellant=s
conversation with Johnson, but one was not required.  When one party to a conversation consents to
the recording, recording that conversation does not require a court order.  See 18 U.S.C. '
2511(2)(c); Tex. Pen. Code Ann. ' 16.02(c)(3).  This exception also applies to a person
operating under color of law, including an officer or informant.  See United States v. Shedan, 651 F.2d
336, 337 (5th Cir. 1981) (upholding admissibility of recording between
appellant and undercover informant under federal wiretap statute when paid
undercover informant gave consent to record conversation); Rovinsky v. State,
605 S.W.2d 578, 581B82
(Tex. Crim. App. 1980) (same); Hernandez v. State, 938 S.W.2d 503, 506
(Tex. App.CWaco
1997, pet. ref=d)
(upholding admissibility of recording between appellant and police officer
under prior version of Texas wiretap statute when officer gave consent to
record conversation).[2]  Johnson consented to the recording of his
conversation with appellant.  In
addition, the trial judge issued a conclusion of law that the federal and Texas
wiretap statutes were not violated because Johnson consented to the
recording.  We agree and uphold the
conclusion of the trial court

Accordingly, we overrule
appellant=s first
point of error.  








II.                
Legal and Factual Sufficiency

In his second point of
error, appellant contends the evidence is legally and factually insufficient to
support his conviction for solicitation of capital murder.  Specifically, appellant argues the taped
conversation between appellant and Johnson does not corroborate the alleged
crime.  

In a legal sufficiency
review, we view all the evidence in the light most favorable to the verdict and
then determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Salinas v. State, 163 S.W.3d 734, 737
(Tex. Crim. App. 2005).  The jury is the
sole judge of the credibility of the witnesses and chooses whether or not to
believe all or part of a witness=s
testimony.  Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). 
We do not engage in a second evaluation of the weight and credibility of
the evidence, but only ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d). 
Thus, if there is evidence establishing guilt beyond a reasonable doubt,
we are not authorized to reverse the judgment on sufficiency of the evidence
grounds.  Harris, 164 S.W.3d at
784.








In a factual sufficiency
review, we consider all the evidence in a neutral light and determine whether a
jury was rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  The evidence may
be factually insufficient in two ways.  Id.  First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt.  Id.  Second, where the evidence both supports and
contradicts the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. at 484B85.  Our evaluation of the evidence should not
intrude upon the fact-finder=s
role as the sole judge of the weight and credibility of the evidence.  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  In conducting a
factual sufficiency review, we must discuss the evidence appellant claims is
most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).  

The
criminal solicitation statute provides in pertinent part:

(a) A person commits an offense
if, with intent that a capital felony or felony of the first degree be
committed, he requests, commands, or attempts to induce another to engage in
specific conduct that, under the circumstances surrounding his conduct as the
actor believes them to be, would constitute the felony or make the other a
party to its commission.  

 

(b) A person may not be convicted
under this section on the uncorroborated testimony of the person allegedly
solicited and unless the solicitation is made under circumstances strongly
corroborative of both the solicitation itself and the actor=s intent that the other person act on the solicitation. 

 

Tex. Pen. Code Ann. ' 15.03(a)B(b) (Vernon 2003). 
The offense of solicitation is complete when the defendant has intent
that a capital felony or felony of the first degree be committed and acts to
induce another to engage in felonious conduct. 
Whatley v. State, 946 S.W.2d 73, 79 (Tex. Crim. App. 1997).  A person commits capital murder if  that person Acommits the murder for remuneration or the promise of
remuneration or employs another to commit the murder for remuneration or the
promise of remuneration.@  Tex. Pen. Code Ann. ' 19.03(a)(3) (Vernon Supp. 2005).  A person commits murder for remuneration
under section 19.03(a)(3) when the actor kills to receive a benefit or
financial settlement paid upon the death of the victim.  Beets v. State, 767 S.W.2d 711, 737
(Tex. Crim. App. 1987).  








The criminal solicitation statute does not allow conviction
based solely on the uncorroborated testimony of the person allegedly
solicited.  See Tex. Pen. Code Ann. ' 15.03(b).  The
circumstances surrounding the solicitation must strongly corroborate the
solicitation itself and the actor=s intent that the other person act on the
solicitation.  Id; Richardson v. State,
700 S.W.2d 591, 594 (Tex. Crim. App. 1985). 
The test used to evaluate corroborating testimony requires us to
eliminate from consideration the accomplice testimony and then determine
whether there is other incriminating evidence tending to connect the defendant
with the crime charged.  Id.  The non-accomplice evidence does not have to
directly link appellant to the crime, nor does it alone have to establish
appellant=s guilt beyond a reasonable doubt; rather, it merely has to
tend to connect appellant to the offense. 
Burks v. State, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994).  Further, although evidence of motive is
insufficient in and of itself to corroborate an accomplice=s testimony, it may be considered with other evidence to
connect the accused with the crime.  Reed
v. State, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988).  

Gary Johnson=s testimony will be eliminated from our analysis when
evaluating corroborating testimony.[3]  Appellant argues
Jerry Hocutt is an accomplice witness, rather than Gary Johnson.  However, the jury charge instructs the jury
on consideration of accomplice testimony and identifies Johnson as the
accomplice witness.  Furthermore, Johnson
was the person with whom appellant actually discussed the details and expected
to carry out the murders.

The
State presented five non-accomplice witnesses during the guilt/innocence phase
of the trial.  They included: Richard
Lee, a police investigator at the Office of the Inspector General; Robbie Lee,
a correctional officer at the Texas Department of Criminal Justice; Jerry Hocutt,
an inmate at the Texas Department of Criminal Justice; Bert Graham, an intended
victim; and David Sheetz, an intended victim. 









The
testimony from these non-accomplice witnesses reveals:  Jerry Hocutt reported to officials at the Wynne
Unit that appellant wanted to hire a hit man to kill Harris County Assistant
District Attorney Bert Graham and Houston police officer David Sheetz; Richard
Lee developed a plan to have Hocutt hire a fake hit man to corroborate Hocutt=s statements; Gary Johnson played the role of a hit man to
afford appellant the opportunity to commit the offense of criminal solicitation
of capital murder and to further corroborate the statements of Jerry Hocutt;
Hocutt wrote a fake letter to the hit man, named ADok Walker,@ and let appellant read it; Hocutt mailed the letter to an
address provided by Johnson; Hocutt agreed to pay the hit man, AWalker,@ $100,000 for killing Graham and $25,000 for killing
Sheetz; as repayment for the killings, appellant would kill two people of
Hocutt=s choosing after appellant was released from prison;
Johnson and Hocutt met at the prison, so appellant could learn Hocutt had met
with the hit man; on December 3, 2003, Robbie Lee escorted appellant to the
visitation building to meet a visitor; a hidden recording device was set up
next to the seat where appellant sat in the visitation building to record the
conversation between appellant and Johnson; and Johnson placed a second back-up
recording device on his arm to record the conversation.  

The
jury also heard testimony from the intended victims, Bert Graham and David
Sheetz.  Bert Graham described past
threats appellant had made to Graham by sending Christmas cards and letters to
Graham after appellant had been sentenced to prison.  David Sheetz described a confrontation
between appellant and Sheetz and a failed attempt for appellant to become an
informant for Sheetz prior to appellant=s sentence to prison. 
This evidence goes to motive and may be considered with other evidence
to connect appellant with the crime.  See
Reed, 744 S.W.2d at 127.








More
importantly, the jury heard the audio tape recording from the device taped to
Johnson=s arm.  Appellant
argues the audio tape alone does not corroborate the solicitation.  However, tape recorded evidence alone may
sufficiently corroborate appellant=s intent.  Ivatury
v. State, 792 S.W.2d 845, 850 (Tex. App.CDallas 1990, pet. ref=d); Varvaro v. State, 772 S.W.2d 140, 143 (Tex. App.CTyler 1988, pet. ref=d).  On the
recording, the jury heard appellant agree to keep quiet when the murders
happened and agree to kill two people for Hocutt to repay his debt by saying, Awhatever Jerry Ray wants.@  Appellant stated he
wanted to make sure the murders happened while he was still in prison, and
Johnson assured him they would. 
Appellant gave Johnson a timetable for when appellant would be out of
prison.  Appellant also stated it was a
good idea for the killings to be separate, and an accident for David Sheetz was
a good idea.  During the conversation,
Johnson did most of the talking, and nowhere on the tapes does appellant
explicitly ask Johnson to kill Graham or Sheetz.  However, appellant also agreed with Johnson=s statements throughout the conversation.  See Guthrie v. State, 149 S.W.3d 829,
833 (Tex. App.CWaco 2004, pet. ref=d) (holding tape recording where many of appellant=s statements were affirmative answers to questions was
sufficient to corroborate accomplice witness testimony and appellant=s intent to kill); cf. Parish v. State, 640 S.W.2d
669, 673 (Tex. App.CHouston [14th Dist.] 1982, no pet.) (holding tape
recordings where conversations between appellant and undercover officers were
nothing more than rambling conversations and were not sufficient to show
appellant requested, commanded, or attempted to induce or cause the death of
the victim).  This case differs from our
prior holding in Parish because even though appellant never specifically
asked Johnson to kill Graham and Sheetz, his intent for that result was
clear.  In Parish, the defendant
jumped from topic to topic and made little sense.  Parish, 640 S.W.2d at 673.  Therefore, the tape recorded evidence, here,
independently corroborates the testimony of both Johnson and Hocutt.   

Appellant
also complains no other independent evidence, besides the recording, creates a
connection between appellant and the crime. 
Appellant points this court to evidence in the record where Johnson
testifies Jerry Hocutt is not credible. 
Appellant also presented two witnesses who testified Hocutt=s reputation in the community for being a peaceful and law
abiding citizen or inmate was bad and his reputation for truth and veracity was
also bad.  This testimony turns on the
jury=s determination of weight of the evidence and credibility
of witnesses.  As the sole judge of
credibility, the jury chooses whether or not to believe all or part of a
witness=s testimony.  Moreno, 755 S.W.2d at 867.  Therefore, weighing this testimony against
the audio tape, the jury could have easily believed Hocutt was telling the
truth.  








Viewing
all the evidence in the light most favorable to the verdict, we find a rational
trier of fact could have found appellant requested, commanded, or attempted to
induce ADok Walker@ to murder Bert Graham and David Sheetz.  Based on the audio recording and the
testimony of the non-accomplice witnesses, the solicitation was sufficiently
corroborated.  Therefore, the evidence is
legally sufficient to find appellant guilty of solicitation of capital
murder.  Viewing the evidence in a
neutral light, we conclude the evidence supporting the verdict was not too weak
to support the verdict beyond a reasonable doubt and the contrary evidence was
not so strong that the beyond-a-reasonable-doubt standard could not have been
met.  Therefore, the evidence is
factually sufficient to find appellant guilty. 
We overrule appellant=s second point of error. 

Conclusion

Having
considered and overruled appellant=s two points of error on appeal, we affirm the judgment of
the trial court. 

 

 

 

 

/s/         John
S. Anderson

Justice

 

 

 

Judgment rendered and Memorandum
Opinion filed February 14, 2006.

Panel consists of Chief Justice Hedges
and Justices Yates and Anderson.

Do Not Publish C Tex. R. App. P.
47.2(b). 

 











[1]  The trial
court issued findings of fact and conclusions of law from the suppression
hearing.  Two conclusions of law address
the federal and Texas wiretap statutes raised in appellant=s second and third arguments:  

 

Article 18 U.S.C. Section 2510 et. [sic] seq. does not
apply to the conversation between Defendant and Gary Johnson because Gary
Johnson was a party to the conversation and he gave the Texas Department of
Criminal [Justice] and the Office of the Inspector General permission to record
the conversation.

 

Article 18.20 of the Texas Code of
Criminal Procedure does not apply to the conversation between Defendant and
Gary Johnson because Gary Johnson was a party to the conversation and he gave
the Texas Department of Criminal [Justice] and the Office of the Inspector
General permission to record the conversation.





[2]  The current
version of the Texas wiretap statute makes section 16.02(c)(3) an affirmative
defense to prosecution.  See Tex. Pen. Code Ann. ' 16.02(c)(3) (Vernon 2003). 





[3]  We distinguish
between Johnson=s trial testimony and the audio recording of his
conversation with appellant in prison. 
For purposes of this analysis, we consider the latter.