NO. 07-07-0429-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 14, 2009

_____

JERRY DALE MORGAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 06-10-6323; HONORABLE HAROLD PHELAN, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Jerry Dale Morgan, was convicted by a jury of felony driving while intoxicated, enhanced by two prior felony convictions, and sentenced to confinement for life. Appellant contends (1) the evidence at trial was legally and factually insufficient to support his DWI conviction; (2) the trial court erred by prematurely terminating his *voir dire*;

and (3) the trial court erred by failing to suppress evidence obtained due to an illegal warrantless arrest. We affirm.[1]

## Background

On October 26, 2006, Appellant was indicted for the third degree felony offense of driving while intoxicated.[2] The range of punishment was enhanced due to two prior felony convictions for driving while intoxicated.[3] On February 24, 2005, Alfred Garcia, manager for WayneBo's Liquor Store, heard a loud noise and felt the building shake. He approached the parking lot and observed a pickup truck had struck a cement post next to the drive-through lane. The driver was slumped over.

---

[1]In this proceeding, the State did not file a brief nor request additional time to do so. Accordingly, we have conducted an independent analysis of the merits of Appellant's claims of error, limited to the arguments raised at trial by the State, to determine if there was error. *See Little v. State*, 246 S.W.3d 391, 397-98 (Tex.App.–Amarillo 2008, no pet.) (collected cases cited therein). The decision to independently review the merits of Appellant's issues should not be construed as an approval of the State's failure to file a brief. Although the State is not required to file a brief, the failure to do so requires this Court to expend valuable judicial resources to determine the parameters of the arguments presented to this Court for consideration.

[2]*See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). As alleged in the indictment, the primary offense was a third degree felony because it alleged that Appellant had previously been convicted two times of an offense relating to the operation of a motor vehicle while intoxicated. *See id.* at § 49.09(b)(2).

[3]The range of punishment was enhanced to a period of confinement for life, or for any term of not more than 99 years or less than 25 years, because it was alleged that Appellant had been previously convicted of two felony offenses, and the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction having become final. *See* Tex. Penal Code Ann. § 12.42(d) (Vernon 2003).

Garcia approached the driver and asked if he was okay or needed anything. The driver asked if Garcia would get him a six pack of beer. Garcia noticed a strong smell of alcohol coming from within the truck cab and the driver's speech was slurred. He refused to serve him and indicated that he was not going to allow the driver to leave the parking lot. The driver agreed not to leave but wanted to back out of the drive-through lane. After he backed up, however, the driver put the truck in "drive," pulled out of the parking lot onto the roadway, and drove away. During this process, Garcia noticed that the front end of the truck was damaged.

As the truck was leaving, Garcia jotted down the license plate number. He believed the driver was extremely intoxicated and might possibly harm himself or someone else. He called 911 and reported the incident. He described the truck as a white Dodge extended cab pickup with a chrome toolbox.

Jose Barrientes, Texas Department of Public Safety Trooper, received a dispatch of Garcia's incident report and began patrolling the area for the truck. Within approximately twenty minutes, he was notified by a Hockley County Sheriff Deputy that the truck had been located. Within minutes, Trooper Barrientes arrived at the location and observed a pickup truck matching Garcia's description parked behind a residence with front-end damage consistent with striking a fixed object such as a concrete pole. The engine was still warm.

Trooper Barrientes approached the front door of that residence and knocked. A woman answered and invited him inside. She identified the truck as belonging to Appellant. Appellant then approached them from downstairs. He verified that he owned the truck but indicated he hadn't driven it in a week. Trooper Barrientes detected a strong odor of alcohol coming from Appellant. His eyes were red and glassy, his speech was slurred, and he was unsteady on his feet—staggering when he walked.

Trooper Barrientes informed Appellant that his truck was damaged and asked if he would come outside to inspect the damage. Appellant complied and, as they walked down the sidewalk, Trooper Barrientes asked Appellant to step in front of his patrol car so that he could document Appellant's condition with his in-car video. Appellant refused and continued toward the truck. After Appellant had inspected the damage, Trooper Barrientes read him his Miranda rights.

Appellant told the officers he had been drinking downstairs at his residence and denied being at WayneBo's earlier. He refused all field sobriety tests. Based on his observations, Trooper Barrientes concluded Appellant was intoxicated and a danger to himself and others.

Meanwhile, Deputy Jesse Quintanilla picked Garcia up at WayneBo's and drove him to the location of Appellant's vehicle. Garcia observed Appellant standing next to a fence. The area was well-lit by the headlights from the patrol cars. Garcia identified Appellant as the intoxicated driver of the vehicle that struck the concrete pole outside WayneBo's and

subsequently drove away.  He also identified Appellant's truck as the vehicle that struck the pole.[4]

Following the identification, Trooper Barrientes believed Appellant had been driving while intoxicated and placed him under arrest.  When he attempted to place Appellant in the patrol car, Appellant leaned in and nearly fell into the car.  The assistance of several officers was necessary to assist Appellant into the car.  At the jail, Appellant refused to give a breath sample.  During a DWI interview prefaced with Miranda warnings, Appellant admitted he had been drinking prior to the time the incident occurred at WayneBo's.

For the defense, Rhonda Morris, general manager of Berry-Stricklen Insurance Services, testified that WayneBo's had not filed a claim on Appellant's policy for damage to the concrete pole.  And, Cynthia Ann Kaufmann, Appellant's cousin through marriage, testified that family members were aware Appellant commonly kept his keys to the truck in its bed underneath the mat liner.  She also identified Appellant from the photograph taken by a deputy the night of the incident, i.e., the same photograph Garcia identified Appellant from earlier in the trial. Thereafter, the jury convicted Appellant of felony driving while intoxicated and subsequently assessed his punishment at life imprisonment.

---

[4]At trial, Garcia could not positively identify Appellant as the driver because "he [didn't] look the same."  However, Garcia positively identified a photograph of Appellant taken by a deputy on the night of the incident as the driver of the pickup that struck the pole.

**Discussion**

Appellant contends the evidence at trial was legally and factually insufficient to support a conviction for felony driving while intoxicated because Garcia was unable to identify Appellant as the driver in the courtroom and, assuming he was the driver, there was no evidence Appellant was intoxicated at the time he allegedly drove the vehicle to and from WayneBo's. He also asserts the trial court prematurely terminated his *voir dire* of the jury regarding any prejudicial impact of his prior record on punishment. Lastly, Appellant contends the trial court erred by failing to suppress evidence obtained due to his illegal warrantless arrest.

## I. Legal and Factual Sufficiency

When conducting a legal sufficiency review of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Instead, we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v.* State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). Circumstantial evidence is as probative as direct evidence in

6

establishing an accused's guilt, and circumstantial evidence alone can be sufficient. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Roberts v. State,* 220 S.W.3d 521, 524 (Tex.Crim.App.), *cert. denied,* ___ U.S. ___,128 S.Ct. 282, 169 L.Ed.2d 206, 76 U.S.L.W. 3165 (2007); *Watson v. State*, 204 S.W. 3d 404, 415 (Tex.Crim.App. 2006). We are to give deference to the factfinder's determination if supported by the record, and cannot reverse a conviction unless we find some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417.

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). A person is considered "intoxicated" if the person: (1) does not have the normal use of their mental faculties by reason of the introduction of alcohol into the body; (2) does not have the normal use of their physical faculties by reason of the introduction of alcohol into the body; or (2) has an alcohol concentration in his breath, blood, or urine of 0.08 or more. *Id.* at § 40.01(2).

That Garcia was unable to positively identify Appellant at trial as the intoxicated driver of the truck that collided with the concrete pole outside WayneBo's is inconsequential. Garcia identified Appellant as the driver shortly after the incident and, at

trial, from a photograph taken the night of the incident. Appellant's sister also identified Appellant from the same photograph.

There was also an abundance of circumstantial evidence from which the jury could infer that Appellant was intoxicated at the time he drove to and from the liquor store the night of the incident: (1) Garcia identified Appellant as the driver of a truck that collided with a concrete pole next to the drive-through lane at WayneBo's with force enough to shake the liquor store; (2) when Garcia stood outside the cab of the truck on the driver's side, he observed that Appellant appeared extremely intoxicated noticing a strong smell of alcohol coming from the truck cab and Appellant's speech was slurred; (3) Appellant left the scene of the accident; (4) a little over twenty minutes later, Trooper Barrientes observed Appellant's truck behind his residence, there was front end damage consistent with striking a stationary object such as a concrete pole, and the engine was warm; (5) when Trooper Barrientes observed Appellant in his residence, he detected a strong odor of alcohol coming from Appellant, his eyes were red and glassy, speech slurred, he staggered when he walked, and he was unstable when placed into the patrol vehicle; and (6) Appellant admitted he was the owner of the pickup and later to drinking before the incident. Garcia identified Appellant's truck as the vehicle that struck the pole and Appellant as the intoxicated driver. Accordingly, having reviewed the entire record, we find the jury's findings were rational and the great weight and preponderance of the evidence supports, rather than contradicts, the verdict. Appellant's first issue is overruled.

8

## II.     *Voir Dire*

It is a well-established principle that the conduct of *voir dire* rests largely within the sound discretion of the trial court.  *Woods v. State*, 152 S.W.3d 105, 108 (Tex.Crim.App. 2004), *cert. denied*, 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005).  The appropriate standard of review is whether the trial court abused that discretion; *Boyd v. State*, 811 S.W.2d 105, 115-116 (Tex.Crim.App.), *cert. denied*, 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991), and "[t]he appropriate standard of harm is to disregard the error unless a substantial right has been affected."  *Woods*, 152 S.W.3d at 109-110.  "A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict."  *Id.* at 110.

A trial court may impose reasonable restrictions on the exercise of *voir dire* examination including reasonable limits on the amount of time each party can question the jury panel.  *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex.Crim.App. 1991), *overruled on other grounds, Castillo v. State*, 913 S.W.2d 529 (Tex.Crim.App. 1995).  A reasonable time limitation for one case may not be reasonable for another, and each case must be examined on its own facts.  *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex.Crim.App. 1985).  While a trial court may not restrict proper questions that seek to discover a juror's view on issues relevant to the case, *McCarter v. State*, 837 S.W.2d 117, 121-22 (Tex.Crim.App. 1992), we will not reverse the trial court's refusal to allow defense counsel additional time

on *voir dire* absent an abuse of discretion. *See id.* at 119*; Caldwell*, 818 S.W.2d at 793; *Dhillon v. State*, 138 S.W.3d 583, 587 (Tex.App.–Houston [14th Dist.] 2004, no pet.).

When a party complains of an inability to collectively question the venire, a two-part test applies: (1) whether the complaining party attempted to prolong the *voir dire*; and (2) whether the questions the party was not permitted to ask were proper *voir dire* questions. *McCarter*, 837 S.W.2d at 121. *See Dhillon*, 138 S.W.3d at 587-88. When an appellant challenges the trial court's limiting the time allowed for *voir dire*, we focus on whether appellant proffered a proper question concerning a proper area of inquiry. *Thacker v. State*, 889 S.W.2d 380, 390 (Tex.App.–Houston [14th Dist.] 1994), *cert. denied*, 516 U.S. 810, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995).

Appellant was permitted in excess of an hour to *voir dire* prospective jurors. He was warned a number of times that his time was expiring but given additional time to complete his questioning. His last request was for an additional fifteen to twenty minutes which the trial court denied but nonetheless granted five additional minutes. Appellant objected but did not state why he required additional time in this particular case or proffer specific questions that he was prevented from asking the prospective jurors.[5] He simply submitted

---

[5]On appeal, Appellant asserts the trial court prematurely terminated his *voir dire* of the jury regarding any prejudicial impact of his two prior DWI convictions on punishment. Of the seventy-two pages transcribing Appellant's *voir dire*, approximately ten pages related to questions intended to determine whether Appellant's prior convictions would have a prejudicial impact on the jury. When the prospective jurors did not respond to Appellant's final open-ended question on the topic of whether any prospective juror would have a bias in favor of the State based upon Appellant's two prior DWI convictions, he then moved to another area of questioning.

10

his *voir dire* outline consisting of eight pages of questions–many of which were open-ended.

Because Appellant did not narrow the scope of his need for further inquiry beyond the eight page outline, a wide range of specific questions–both proper and improper–could have been asked. Given the broad nature of this request, it is impossible for this Court to determine whether Appellant's further inquiry would have been appropriately phrased, non-repetitive and/or relevant. *See Hart v. State*, 173 S.W.3d 131, 139 (Tex.App.–Texarkana 2005, no pet.). Unable to make this determination, we cannot find that the trial court abused its discretion in refusing Appellant's request for additional time. *See Caldwell*, 818 S.W.2d at 794; *Barrett v. State*, 516 S.W.2d 181, 182 (Tex.Crim.App. 1974). *See also Thacker*, 889 S.W.2d at 390-91. Appellant's second issue is overruled.

### III.    Warrantless Arrest

Appellant maintains the trial court erred by refusing to suppress evidence obtained as a result of an illegal warrantless arrest. A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). However, where we are presented with a question of law based on undisputed facts, we perform a *de novo* review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). In our review, the evidence is viewed in a light most favorable to the trial court's ruling because findings of fact were neither requested nor issued. *See Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000). If the trial court's decision is correct on any theory

11

of law applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003), *cert. denied,* 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004).

The sole issue at the suppression hearing was whether Appellant's warrantless arrest for driving while intoxicated met the requirements of the Texas Code of Criminal Procedure. As a general rule, police officers must obtain an arrest warrant before taking someone into custody. *De Jarnett v. State*, 732 S.W.2d 346, 349 (Tex.Crim.App. 1987). However, a police officer may arrest an individual without a warrant if (1) probable cause exists with respect to the individual in question and (2) the arrest falls within one of the statutory exceptions in articles 14.01-14.04 of the Texas Code of Criminal Procedure.[6] *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App. 1991); *Lunde v. State*, 736 S.W.2d 665, 666 (Tex.Crim.App. 1987).

Article 14.01 permits a warrantless arrest for driving while intoxicated when the offense is committed in the view, or in the presence, of an arresting officer.[7] *See Warrick*

---

[6]Hereinafter, for convenience, citations to the Texas Code of Criminal Procedure will be made as follows: "art. ____" or "Article ____".

[7]Article 14.01 states:

(a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or view, if the offense is one classed as a felony or as an offense against the public peace.

(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

12

*v. State,* 634 S.W.2d 707, 709 (Tex.Crim.App. 1982). Because Trooper Barrientes did not see Appellant driving, a warrantless arrest for DWI would have been improper under Article 14.01. *See Peddicord v. State,* 942 S.W.2d 100, 109 (Tex.App.–Amarillo 1997, no pet.); *Elliott v. State,* 908 S.W.2d 590, 592 (Tex.App.–Austin 1995, pet. ref'd); *Lopez v. State*, 936 S.W.2d 332, 334 (Tex.App.–San Antonio 1996, no pet.); *Reynolds v. State*, 902 S.W.2d 558, 560-61 (Tex.App.–Houston [1st Dist.] 1995, pet. ref'd).[8]

Article 14.03(a)(1) permits a warrantless arrest of persons (1) found in suspicious places and (2) under circumstances which reasonably show that such persons have been guilty of a breach of peace, among other offenses.[9] Driving while intoxicated is a breach of peace. *Gallups v. State*, 151 S.W.3d 196, 201 (Tex.Crim.App. 2004); *Romo v. State*, 577 S.W.2d 251, 253 (Tex.Crim.App. 1979). Thus, if Appellant was in a "suspicious place,"

---

[8]Under the proper circumstances, even though "an arrest for DWI may not be appropriate where the crime was not committed in the officer's presence or view, an otherwise valid arrest for public intoxication will be upheld." *Lopez*, 936 S.W.2d at 334; *Elliot*, 908 S.W.2d at 592; *Segura v. State*, 826 S.W.2d 178, 185 (Tex.App.–Dallas 1992, pet. ref'd). However, Trooper Barrientes testified that he did not make a warrantless arrest for public intoxication because he did not consider Appellant's residence or his backyard to be a public place.

[9]Article 14.03 provides, in pertinent part, as follows:

(a) Any peace officer may arrest, without warrant:

(1) persons found in suspicious places under circumstances which reasonably show that such persons have been guilty of some felony violation of Title 9, Chapter 42, Penal Code, breach of peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws;

13

under circumstances which reasonably show that he was driving while intoxicated, then Trooper Barrientes had authority to arrest Appellant without a warrant.

Few, if any, places are inherently suspicious. *Dyar v. State,* 125 S.W.3d 460, 464-65 (Tex.Crim.App. 2003) (quoting *Johnson v. State*, 722 S.W.2d 417, 421 (Tex.Crim.App. 1986), *overruled on other grounds, McKenna v. State*, 780 S.W.2d 797, 799 (Tex.Crim.App. 1989)). Determining whether a place has become suspicious is highly fact specific. *Dyar*, 125 S.W.3d at 468 (citing *Holland v. State*, 788 S.W.2d 112, 113 (Tex.App.–Dallas 1990, pet. ref'd)). A place may become "suspicious" because of facts and circumstances, together with any reasonable inferences which can be drawn from those facts. *Sandoval v. State,* 35 S.W.3d 763, 769 (Tex.App.–El Paso 2000, pet. ref'd). Suspicious places may include a hospital where a defendant was arrested for DWI soon after he was transported there after an accident; *Dyar*, 125 S.W.3d at 468, a residence where a defendant was arrested for DWI soon after he abandoned his wrecked truck and fled the scene of an accident; *Gallups*, 151 S.W.3d at 202, or a backyard where a defendant was arrested for DWI soon after he fled the scene of an accident in his vehicle. *Sandoval v. State,* 35 S.W.3d at 769-70. To determine whether Appellant's warrantless arrest was proper under article 14.03(a)(1), we apply a totality of circumstances test. *See Dyar*, 125 S.W.3d at 468.

In this case, Trooper Barrientes observations and the physical evidence in Appellant's backyard tied Appellant and his pickup truck to the accident scene where

14

Appellant was observed by Garcia to be committing a breach of the peace, i.e., driving while intoxicated. Trooper Barrientes had received a dispatch based on an eyewitness account of a one-vehicle collision, a detailed description of the truck that fled the scene, and information that the driver was intoxicated. In a little more than twenty minutes, a truck matching that description was located behind a residence along a fence in an alley. Trooper Barrientes observed that the truck engine was warm and there was damage to the front end consistent with the reported collision. He also observed Appellant, the owner of the truck, as staggering, with red and glassy eyes, and slurred speech. Subsequently, the eyewitness to the accident identified Appellant as the driver of the truck involved in the collision and the truck as the vehicle that struck the concrete pole outside his liquor store. The totality of these circumstances made Appellant's backyard a "suspicious place." This conclusion is buttressed by the short time frame between the crime and the apprehension of the suspect; *Dyar,* 125 S.W.3d at 468, and the exigent circumstances (the need to ascertain the suspect's blood-alcohol level)[10] existing to justify an immediate arrest. *Gallops*, 151 S.W.3d at 202. The same facts also provided probable cause to believe that Appellant had been drinking and driving.

Accordingly, we find that Appellant's warrantless arrest pursuant to article 14.03(a)(1) was proper and overrule his third issue.

---

[10]"Proving intoxication is an essential element of the offense, and testing for alcohol levels is a time-sensitive matter." *Sandoval,* 35 S.W.3d at 769 ("Evanescent quality of evidence combined with other factors may combine to satisfy article 14.03(a)(1).").

## Conclusion

      The trial court's judgment is affirmed.


                        Patrick A. Pirtle
                            Justice

Do not publish.